IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CHERYLANN CARPENTER, Administrator of the Estate of SANDRA SCOTT, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 04 CV 02275 |
| OFFICE OF THE LAKE COUNTY SHERIFF, et al., | ) ) ) | Judge Amy St. Eve |
| Defendants. | ) ) | |

**NOTICE OF FILING**

To:    All Counsel of Record
       See Attached Service List

PLEASE TAKE NOTICE that on March 23, 2005, I caused to be filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **Plaintiff's Third Amended Complaint at Law**, a copy of which is attached hereto and served upon you.

POWER ROGERS & SMITH, P.C.

By: _____
                   Attorney for Plaintiff

Joseph A. Power, Jr.
Kenneth J. Merlino
POWER ROGERS & SMITH, P.C.
Three First National Plaza
70 W. Madison Street, 55th Floor
Chicago, IL 60602-4212
312-236-9381
31444

**CERTIFICATE OF SERVICE**

The undersigned being first duly sworn on oath, deposes and states pursuant to 28 U.S.C. §1746 that she served this Notice and attached document upon the parties to whom it is directed by enclosing a true copy of same in a properly addressed, stamped envelope and depositing the envelope in the U.S. mail located at 70 W. Madison Street, Chicago, Illinois, at or before 5:00 pm. on March 23, 2005.

_____

**FILED**

MAR 2 3 2005

MICHAEL W. DOBBINS
CLERK, U. S. DISTRICT COURT

## SERVICE LIST

IN RE:    Carpenter (Scott) v. Office of the Lake county Sheriff, et al.
          Court No. 04 CV 2275
          Our File No. 5347

**Attorney for Plaintiff**
Richard Daniels
Robert Long
Daniels Long & Pinsel
19 N. County Street
Waukegan, IL 60085
847-623-5900
847-623-1767 - fax

**Atty. for Def., John V. Dunne, Ph.D.**
Andrew L. Dryjanski
Lawerence J. Falli
Kenneth Smith
Gary Griffin
Asst. Attorney General
General Law Bureau
100 W. Randolph St., 13th FL.
Chicago, IL. 60601
312/814-3632
Fax No. 312/814-4425

**Attys. for Correctional Medical Services of Illinois, Karen Walker and Richard Wagner**
Holly M. Travis
P. Stephen Fardy
Kevin T. Martin
Swanson, Martin & Bell
330 N. Wabash, Ste. 3300
Chicago, IL. 60611
312/321-9100
Fax No. 312/321-0990

**Atty. For Genaline Japcyzk**
William J. Rogers
James E. Abbott
Bollinger Ruberry & Garvey
500 W. Madison Street, Suite 2300
Chicago, IL 60661
312-466-8000
312-466-8001

**Attys for Office of Lake County Sheriff, Gary Del Re, Charles DeFilippo, Rodney Holmes and Peter Dickson**
Daniel P. Field
Paul Ciastko
Scariano Himes & Petrarca, Chtd.
209 West Madison Street
Waukegan, IL 60085
847-662-5800
Fax No. 847-662-6813

**Attorney for Joel Mollner, L.C.S.W.**
Thomas Underwood
Michael Sanders
Purcell & Wardrope
10 S. LaSalle Street, Suite 1200
Chicago, Illinois 60603
312-427-3900
312-427-3944 - fax

**Attorney for Richard Wagner, M.D., Individually and as agent or employee of Provena Hospitals, Vista Health, St. Therese Medical Center and Provena St. Therese Medical Center, Provena Hospitals, St. Therese Medical and Provena St. Therese Medical Center**
Anna M. Loftus
Hall Prangle & Schoonveld, LLC
225 West Washington Street
Suite 2700
Chicago, IL 60606
312-345-9600
312-345-9608 - fax
312-267-6207 - direct line

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*F I L E D*

*MAR 2 3 2005*

*MICHAEL W. DOBBINS*
*CLERK, U. S. DISTRICT COURT*

| | | |
|---|---|---|
| CHERYLANN CARPENTER, Administrator of the Estate of SANDRA SCOTT, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No.    04 C 2275 |
| OFFICE OF THE LAKE COUNTY SHERIFF, Gary Del Re, Individually and as an agent or employee of the OFFICE OF THE LAKE COUNTY SHERIFF, Charles M. De Filippo, Jr., Individually and as an agent or employee of the OFFICE OF THE LAKE COUNTY SHERIFF, Rodney K. Holmes, Individually, and an as agent or employee of the OFFICE OF THE LAKE COUNTY SHERIFF, Peter C. Dickson, Individually and as an employee of OFFICE OF THE LAKE COUNTY  SHERIFF, Joel Mollner, L.C.S.W., Individually, and as an agent or employee of CORRECTIONAL MEDICAL SERVICES, INC., Genaline Japczyk, Individually, and as an agent or employee of CORRECTIONAL MEDICAL SERVICES, INC., KAREN WALKER, Individually, and as an agent or employee of CORRECTIONAL MEDICAL SERVICES, INC., RICHARD WAGNER, M.D., Individually, and as an agent or employee of CORRECTIONAL MEDICAL SERVICES, INC, CORRECTIONAL MEDICAL SERVICES, INC., JOHN V. DUNNE, PH.D., RICHARD WAGNER, M.D., Individually and as an agent or employee of PROVENA HOSPITALS, VISTA HEALTH, SAINT THERESE MEDICAL CENTER AND PROVENA SAINT THERESE MEDICAL CENTER, MILTON LEONARDO POZO, M.D., Individually and as an agent or employee of EXCEL EMERGENCY CARE, LLC, and as an agent or employee of PROVENA HOSPITALS, VISTA HEALTH, SAINT THERESE MEDICAL CENTER AND PROVENA SAINT THERESE MEDICAL CENTER; EXCEL EMERGENCY CARE, LLC.; PROVENA HOSPITALS, VISTA HEALTH, SAINT THERESE MEDICAL CENTER AND  PROVENA SAINT THERESE MEDICAL CENTER, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Hon. Amy St. Eve<br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |
| Defendants. | ) ) | |

**PLAINTIFF'S THIRD AMENDED COMPLAINT AT LAW**

Plaintiff Cherylann Carpenter, Administrator of the Estate of Sandra Scott, Deceased, by her attorneys Power, Rogers & Smith, P.C., and complaining of Defendants, in the hypothetical and the alternative, allege as follows:

## I. Jurisdiction and Venue

1.　　　This action is brought, in part, pursuant to 42 U.S.C. §1983 for deprivation of Plaintiff's constitutional civil rights, jurisdiction is therefore appropriate under 28 U.S.C. §1331 and 1343. The state law claims (negligence) are properly before this Court via supplemental jurisdiction under 28 USC §1367.

2.　　　The claims asserted herein arose in the area encompassed by the United States District Court for the Northern District of Illinois, and venue is therefore proper under 28 U.S.C. §1391(b).

## Count I
## (Plaintiff v. Office of Sheriff of Lake County) (42 USC §1983)

1.　　　From March 26, 2003, until and including March 29, 2003, and at all times material, the defendant the Office of the Sheriff of Lake County owned, operated, and maintained the Lake County jail for purposes of housing inmates and pretrial detainees, and, as such, was acting under color of State Law.

2.　　　From March 26, 2003 until and including March 29, 2003, Plaintiff's decedent Sandra Scott was a pretrial detainee in the care, custody and control of the Sheriff of Lake County with a high risk for self-destructive behavior including suicide.

3.　　　On March 26, 2003 until and including March 29, 2003, and at all times material, the Office of the Sheriff of Lake County, by and through its agents and employees, knew that Sandra Scott was a pretrial detainee with a high risk of self-destructive behavior, including suicide.

2

4.      On March 26, 2003, Sandra Scott came under the actual care, custody and control

of the defendant Sheriff of Lake County who therefore became responsible for Sandra Scott's

health, safety and overall welfare.

5.      From March 26, 2003 until and including March 29, 2003, notwithstanding the

duties and obligations described above, the defendant Sheriff of Lake County, by and through its

agents and employees, committed one or more of the following acts of utter indifference or

conscious disregard:

      a.     failed to ensure that Sandra Scott was placed on suicide watch, requiring 15 minute checks, despite the bond court's order that she posed a risk of danger to her self and others;

      b.     failed to ensure that Sandra Scott was placed in a cell with a roommate that could alert jail staff if she was exhibiting behavior indicating a desire to harm herself;

      c.     allowed to exist or failed to correct or remedy a known hazard and means of suicide in that it failed to correct and remove the holes under the shelves in detainee's cells, despite knowing, though the death of Justin Farver on October 13, 1998, that this was an area that could accommodate and sustain a cloth or sheet to cause death by hanging;

      d.     failed to monitor Sandra Scott on 15 minute or less checks;

      e.     failed or intentionally deprived Sandra Scott of housing in a hospital or medical ward when it knew that she needed to be in a closely monitored medical environment;

      f.     had no policy or procedure in effect to monitor, supervise, or observe inmates or detainees who were suicide risks;

      g.     had a policy in effect to house inmates or detainees who were suicide risks in physically and visually isolated cells;

      h.     as a matter of standard operating procedure, employed both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical and psychological care to inmates and detainees.

6.      As a direct and proximate result of one or more of the foregoing wrongful acts and

3

omissions, Plaintiff's decedent Sandra Scott was deprived of rights, privileges and immunities guaranteed to her by the Eighth and Fourteenth Amendments to the United States Constitution, namely, she hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

7.      Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

8.      Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 42 U.S.C. §1983, for the benefit of her daughter Breanna Workman, her parents and siblings, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Office of Sheriff of Lake County for an amount in excess of $100,000.00, plus punitive damages in an amount to be set by the jury, costs, and attorneys' fees, and for all other legal and equitable remedies available under state and federal law.

### Count II
### (Plaintiff v. Office of Sheriff of Lake County)
### (State Law Claims: Wrongful Death/Survival)

1.      From March 26, 2003, until and including March 29, 2003, and at all times material, the defendant the Office of the Sheriff of Lake County owned, operated, and maintained the Lake County jail for purposes of housing inmates and pretrial detainees, and, as such, was acting under color of State Law.

2.      From March 26, 2003 until and including March 29, 2003, Plaintiff's decedent Sandra Scott was a pretrial detainee in the care, custody and control of the Sheriff of Lake County with a high risk for self-destructive behavior including suicide.

3.      On March 26, 2003 until and including March 29, 2003, and at all times material, the

4

Office of the Sheriff of Lake County, by and through its agents and employees, knew that Sandra Scott was a pretrial detainee with a high risk of self-destructive behavior, including suicide.

4. On March 26, 2003, Sandra Scott came under the actual care, custody and control of the defendant Sheriff of Lake County who therefore became responsible for Sandra Scott's health, safety and overall welfare.

5. From March 26, 2003 until and including March 29, 2003, notwithstanding the duties and obligations described above, the defendant Sheriff of Lake County, by and through its agents and employees, committed one or more of the following negligent acts:

a. failed to ensure that Sandra Scott was placed on suicide watch, requiring 15 minute checks, despite the bond court's order that she posed a risk of danger to her self and others;

b. failed to ensure that Sandra Scott was placed in a cell with a roommate that could alert jail staff if she was exhibiting behavior indicating a desire to harm herself;

c. allowed to exist or failed to correct or remedy a known hazard and means of suicide in that it failed to correct and remove the holes under the shelves in detainee's cells, despite knowing, though the death of Justin Farver on October 13, 1998, that this was an area that could accommodate and sustain a cloth or sheet to cause death by hanging;

d. failed to monitor Sandra Scott on 15 minute or less checks;

e. failed or intentionally deprived Sandra Scott of housing in a hospital or medical ward when it knew that she needed to be in a closely monitored medical environment;

f. had no policy or procedure in effect to monitor, supervise, or observe inmates or detainees who were suicide risks;

g. had a policy in effect to house inmates or detainees who were suicide risks in physically and visually isolated cells;

h. as a matter of standard operating procedure, employed both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical and psychological care to inmates and detainees.

5

6.      As a proximate result of one or more of these actions/inactions, Plaintiff's Decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

7.      As a proximate result of one or more of the aforesaid, Sandra Scott endured conscious pain and suffering, disability and disfigurement, prior to her death on March 29, 2003.

8.      That had she survived, Decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

9.      Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

10.     Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

11.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Illinois Wrongful Death Act, for the benefit of her daughter Breanna Workman, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Office of Sheriff of Lake County for an amount in excess of $100,000.00, and for all other legal and equitable remedies available under state and federal law.

## Count III

### (Plaintiff v. Gary Del Re/Sheriff of Lake County) (42 U.S.C. § 1983)

1.      From March 26, 2003, until and including March 29, 2003, and at all times material, the defendant was the Sheriff of Lake County, and was the chief officer of the entity that owned, operated, and maintained the Lake County jail for purposes of housing inmates and pretrial detainees, and, as such, was acting under color of State Law.

6

2. On March 26, 2003 until and including March 29, 2003, and at all times material, Gary Del Re, was responsible for directing the day to day operation of the Lake County jail.

3. From March 26, 2003 until and including March 29, 2003, and at all times material, Plaintiff's decedent Sandra Scott was a pretrial detainee in the care and custody of the Lake County Jail, with a high risk for self-destructive behavior, including suicide.

4. On March 26, 2003 until and including March 29, 2003, and at all times material, Gary Del Re, had actual personal knowledge, as a result of the death by suicide of a previous detainee, Justin Farver of the risk that the physical condition of the jail cells posed to individuals with a high risk for self-destructive behavior including suicide.

5. On March 26, 2003 until and including March 29, 2003, and at all times material, Gary Del Re, had actual personal knowledge, as a result of the death by suicide of a previous detainee, Justin Farver of the inadequacy of the Lake County jail's policies and procedures for dealing with individuals who posed a high risk for self-destructive behavior including suicide.

6. On March 26, 2003 until and including March 29, 2003, and at all times material, Gary Del Re had actual personal knowledge, as a result of the trial related to the death by suicide of Justin Farver, that Defendant Correctional Medical Services, Inc. ("CMS") tolerated if not encouraged the custom or practice of CMS that encompassed deliberate indifference to the substantial danger posed to the life and death of suicidal inmates. Specifically, Gary Del Re had actual personal knowledge that CMS personnel were incompetent and were utterly indifferent to inmates who were suicidal and yet personally decided to keep CMS employed at the jail despite knowing of their failures which he learned of by virtue of death by suicide of Justin Farver and subsequent trial of that suit.

7. On March 26, 2003 until and including March 29, 2003, and at all times material, Gary Del Re had actual personal knowledge, as a result of the trial related to the death by suicide of Justin Farver, that the CMS personnel responsible for Sandra Scott's care while she was in

7

custody, including Joel Mollner, LCSW, Genaline Japcyzk, R.N., Karen Walker and Richard

Wagner, M.D. were not competent to provide care to suicidal individuals such as Sandra Scott,

       8.     From March 26, 2003 until and including March 29, 2003, notwithstanding the duties

and obligations described above, the defendant Gary Del Re, personally authorized and/or

generated, and/or failed to correct the policies and procedures that played an integral part in the

following acts following acts of indifference or conscious disregard:

        a.     failed to alter the policies and procedures for dealing with suicidal inmates after the death of Justin Farver;

        b.     failed to ensure that Sandra Scott was placed on suicide watch, requiring 15 minute checks, despite the bond court's order that she posed a risk of danger to her self and others;

        c.     failed to ensure that Sandra Scott was placed in a cell with a roommate that could alert jail staff if she was exhibiting behavior indicating a desire to harm herself;

        d.     authorized the removal of the hooks on the coat racks placed in detainees' cells, thereby increasing the danger that the rack posed to suicidal inmates by leaving holes in the rack, which Gary Del Re knew, as a result of the death of Justin Farver on October 13, 1998, could accommodate and sustain a cloth or sheet sufficient to cause death by hanging;

        e.     deprived Sandra Scott of housing in a hospital or medical ward when it knew that she needed to be in a closely monitored medical environment;

        f.     had no policy or procedure in effect to monitor, supervise, or observe inmates or detainees who were suicide risks;

        g.     had a policy in effect to house inmates or detainees who were suicide risks in physically and visually isolated cells;

        h.     continued to contract with Correctional Medical Services, Inc. and Joel Mollner, for inmate health care even he reasonably should have known that both parties were not competent to care for suicidal individual; or

        I.     as a matter of standard operating procedure, employed both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical and psychological care to inmates and detainees.

9.     As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott was deprived of rights, privileges and immunities guaranteed to her by the Eighth and Fourteenth Amendments to the United States Constitution, namely, she hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

10.     Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

11.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 42 U.S.C. §1983, for the benefit of her daughter Breanna Workman, her parents and siblings, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Gary Del Re, Individually and as an agent or employee of Office of the Lake County Sheriff, for an amount in excess of $100,000.00, plus punitive damages in an amount to be set by the jury, costs, and attorneys' fees, and for all other legal and equitable remedies available under state and federal law.

## Count IV
### (Plaintiff v. Gary Del Re/Sheriff of Lake County)
### (State Law Claims/Wrongful Death/Survival)

1.     From March 26, 2003, until and including March 29, 2003, and at all times material, the defendant was the Sheriff of Lake County, and was the chief officer of the entity that owned, operated, and maintained the Lake County jail for purposes of housing inmates and pretrial detainees, and, as such, was acting under color of State Law.

2.     On March 26, 2003 until and including March 29, 2003, and at all times material, Gary Del Re, was responsible for directing the day to day operation of the Lake County jail.

9

3.  From March 26, 2003 until and including March 29, 2003, and at all times material, Plaintiff's decedent Sandra Scott was a pretrial detainee in the care and custody of the Lake County Jail, with a high risk for self-destructive behavior, including suicide.

4.  On March 26, 2003 until and including March 29, 2003, and at all times material, Gary Del Re, had actual personal knowledge, as a result of the death by suicide of a previous detainee, Justin Farver of the risk that the physical condition of the jail cells posed to individuals with a high risk for self-destructive behavior including suicide.

5.  On March 26, 2003 until and including March 29, 2003, and at all times material, Gary Del Re, had actual personal knowledge, as a result of the death by suicide of a previous detainee, Justin Farver of the inadequacy of the Lake County jail's policies and procedures for dealing with individuals who posed a high risk for self-destructive behavior including suicide.

6.  On March 26, 2003 until and including March 29, 2003, and at all times material, Gary Del Re had actual personal knowledge, as a result of the trial related to the death by suicide of Justin Farver, that Defendant Correctional Medical Services, Inc. ("CMS") tolerated if not encouraged the custom or practice of CMS that encompassed deliberate indifference to the substantial danger posed to the life and death of suicidal inmates. Specifically, Gary Del Re had actual personal knowledge that CMS personnel were incompetent and were utterly indifferent to inmates who were suicidal and yet personally decided to keep CMS employed at the jail despite knowing of their failures which he learned of by virtue of death by suicide of Justin Farver and subsequent trial of that suit.

7.  On March 26, 2003 until and including March 29, 2003, and at all times material, Gary Del Re had actual personal knowledge, as a result of the trial related to the death of Justin Farver, that the CMS personnel responsible for Sandra Scott's care while she was in custody, including Joel Mollner, LCSW, Genaline Japcyzk, R.N., Karen Walker and Richard Wagner, M.D. were not competent to provide care to suicidal individuals such as Sandra Scott.

10

8.    From March 26, 2003 until and including March 29, 2003, notwithstanding the duties and obligations described above, the defendant Gary Del Re, personally authorized and/or generated, and/or failed to correct the policies and procedures that played an integral part in the following negligent acts:

a.    failed to alter the policies and procedures for dealing with suicidal inmates after the death of Justin Farver;

b.    failed to ensure that Sandra Scott was placed on suicide watch, requiring 15 minute checks, despite the bond court's order that she posed a risk of danger to her self and others;

c.    failed to ensure that Sandra Scott was placed in a cell with a roommate that could alert jail staff if she was exhibiting behavior indicating a desire to harm herself;

d.    authorized the removal of the hooks on the coat racks placed in detainees' cells, thereby increasing the danger that the rack posed to suicidal inmates by leaving holes in the rack, which Gary Del Re knew, as a result of the death of Justin Farver on October 13, 1998, could accommodate and sustain a cloth or sheet sufficient to cause death by hanging;

e.    deprived Sandra Scott of housing in a hospital or medical ward when it knew that she needed to be in a closely monitored medical environment;

f.    had no policy or procedure in effect to monitor, supervise, or observe inmates or detainees who were suicide risks;

g.    had a policy in effect to house inmates or detainees who were suicide risks in physically and visually isolated cells;

h.    continued to contract with Correctional Medical Services, Inc. and Joel Mollner, for inmate health care even he reasonably should have known that both parties were not competent to care for suicidal individual; or

i.    as a matter of standard operating procedure, employed both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical and psychological care to inmates and detainees.

9.    As a proximate result of one or more of the aforesaid, Sandra Scott endured

11

conscious pain and suffering, disability and disfigurement, prior to her death on September 29, 2003.

10.     That had she survived, Decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

11.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

12.     Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

13.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Illinois Wrongful Death Act, for the benefit of her daughter Breanna Workman, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Gary Del Re, Individually and as an agent or employee of Office of the Lake County Sheriff, for an amount in excess of $100,000.00, plus punitive damages in an amount to be set by the jury, costs, and attorneys' fees, and for all other legal and equitable remedies available under state and federal law.

### Count V
### (Plaintiff v. Charles M. De Filipo, Jr./Office of Lake County Sheriff)
### (42 U.S.C. § 1983)

1.     From March 26, 2003, until and including March 29, 2003, and at all times material, the defendant was the Director of Corrections, and was the chief officer of the entity that owned, operated, and maintained the Lake County jail for purposes of housing inmates and pretrial detainees, and, as such, was acting under color of State Law.

12

2.      On March 26, 2003 until and including March 29, 2003, and at all times material, Charles M. De Filipo, established the procedures governing the operation and management of the Lake County jail.

3.      From March 26, 2003 until and including March 29, 2003, and at all times material, Plaintiff's decedent Sandra Scott was a pretrial detainee in the care and custody of the Lake County Jail, with a high risk for self-destructive behavior, including suicide.

4.      On March 26, 2003 until and including March 29, 2003, and at all times material, Charles M. De Filipo, had actual personal knowledge, as a result of the death by suicide of a previous detainee, Justin Farver of the risk that the physical condition of the jail cells posed to individuals with a high risk for self-destructive behavior including suicide.

5.      On March 26, 2003 until and including March 29, 2003, and at all times material, Charles M. De Filipo, had actual personal knowledge, as a result of the death by suicide of a previous detainee, Justin Farver of the inadequacy of the Lake County jail's policies and procedures for dealing with individuals who posed a high risk for self-destructive behavior including suicide.

6.      On March 26, 2003 until and including March 29, 2003, and at all times material, Charles M. De Filipo had actual personal knowledge, as a result of the trial related to the death of Justin Farver, that Defendant Correctional Medical Services  Inc. ("CMS") tolerated if not encouraged the custom or practice of CMS that encompassed deliberate indifference to the substantial danger posed to the life and death of suicidal inmates.  Specifically, Charles M. De Filipo had actual personal knowledge that CMS personnel were incompetent and were utterly indifferent to inmates who were suicidal and yet personally decided to keep CMS employed at the jail despite knowing of their failures which he learned of by virtue of death by suicide of Justin Farver and subsequent trial of that suit.

7.      On March 26, 2003 until and including March 29, 2003, and at all times material, Charles M. De Filipo had actual personal knowledge, as a result of the trial related to the death of Justin Farver, that the CMS personnel responsible for Sandra Scott's care while she was in custody, including Joel Mollner, LCSW, Genaline Japcyzk, R.N., Karen Walker and Richard Wagner, M.D. were not competent to provide care to suicidal individuals such as Sandra Scott.

8.      From March 26, 2003 until and including March 29, 2003, notwithstanding the duties and obligations described above, the defendant Charles M. De Filipo, personally authorized and/or generated, and/or failed to correct the policies and procedures that played an integral part in the following acts following acts of indifference or conscious disregard:

a.      failed to alter the policies and procedures for dealing with suicidal inmates after the death of Justin Farver;

b.      failed to ensure that Sandra Scott was placed on suicide watch, requiring 15 minute checks, despite the bond court's order that she posed a risk of danger to her self and others;

c.      failed to ensure that Sandra Scott was placed in a cell with a roommate that could alert jail staff if she was exhibiting behavior indicating a desire to harm herself;

d.      authorized the removal of the hooks on the coat racks placed in detainees' cells, thereby increasing the danger that the rack posed to suicidal inmates by leaving holes in the rack, which Gary Del Re knew, as a result of the death of Justin Farver on October 13, 1998, could accommodate and sustain a cloth or sheet sufficient to cause death by hanging;

e.      deprived Sandra Scott of housing in a hospital or medical ward when it knew that she needed to be in a closely monitored medical environment;

f.      had no policy or procedure in effect to monitor, supervise, or observe inmates or detainees who were suicide risks;

g.      had a policy in effect to house inmates or detainees who were suicide risks in physically and visually isolated cells;

14

h.  continued to contract with Correctional Medical Services, Inc. and Joel Mollner, for inmate health care even he reasonably should have known that both parties were not competent to care for suicidal individual; or

i.  as a matter of standard operating procedure, employed both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical and psychological care to inmates and detainees.

9.  As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott was deprived of rights, privileges and immunities guaranteed to her by the Eighth and Fourteenth Amendments to the United States Constitution, namely, she hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

10.  Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

11.  Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 42 U.S.C. §1983, for the benefit of her daughter Breanna Workman, her parents and siblings, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Charles De Filippo, Individually and as an agent or employee of Office of the Lake County Sheriff, for an amount in excess of $100,000.00, plus punitive damages in an amount to be set by the jury, costs, and attorneys' fees, and for all other legal and equitable remedies available under state and federal law.

15

**Count VI**
**(Plaintiff v. Charles M. De Filipo, Jr./Office of Lake County Sheriff)**
**(State Law Claims/Wrongful Death/Survival)**

1.      From March 26, 2003, until and including March 29, 2003, and at all times material, the defendant was the Director of Corrections, and was the chief officer of the entity that owned, operated, and maintained the Lake County jail for purposes of housing inmates and pretrial detainees, and, as such, was acting under color of State Law.

2.      On March 26, 2003 until and including March 29, 2003, and at all times material, Charles M. De Filipo, established the procedures governing the operation and management of the Lake County jail.

3.      From March 26, 2003 until and including March 29, 2003, and at all times material, Plaintiff's decedent Sandra Scott was a pretrial detainee in the care and custody of the Lake County Jail, with a high risk for self-destructive behavior, including suicide.

4.      On March 26, 2003 until and including March 29, 2003, and at all times material, Charles M. De Filipo, had actual personal knowledge, as a result of the death by suicide of a previous detainee, Justin Farver of the risk that the physical condition of the jail cells posed to individuals with a high risk for self-destructive behavior including suicide.

5.      On March 26, 2003 until and including March 29, 2003, and at all times material, Charles M. De Filipo, had actual personal knowledge, as a result of the death by suicide of a previous detainee, Justin Farver of the inadequacy of the Lake County jail's policies and procedures for dealing with individuals who posed a high risk for self-destructive behavior including suicide.

6.      On March 26, 2003 until and including March 29, 2003, and at all times material, Charles M. De Filipo had actual personal knowledge, as a result of the trial related to the death of Justin Farver, that Defendant Correctional Medical Services  Inc. ("CMS") tolerated if not

16

encouraged the custom or practice of CMS that encompassed deliberate indifference to the substantial danger posed to the life and death of suicidal inmates. Specifically, Charles M. De Filipo had actual personal knowledge that CMS personnel were incompetent and were utterly indifferent to inmates who were suicidal and yet personally decided to keep CMS employed at the jail despite knowing of their failures which he learned of by virtue of death by suicide of Justin Farver and subsequent trial of that suit.

      7.     On March 26, 2003 until and including March 29, 2003, and at all times material, Charles M. De Filipo had actual personal knowledge, as a result of the trial related to the death by suicide of Justin Farver, that the CMS personnel responsible for Sandra Scott's care while she was in custody, including Joel Mollner, LCSW, Genaline Japcyzk, R.N., Karen Walker and Richard Wagner, M.D. were not competent to provide care to suicidal individuals such as Sandra Scott.

      8.     From March 26, 2003 until and including March 29, 2003, notwithstanding the duties and obligations described above, the defendant Charles M. De Filipo, personally authorized and/or generated, and/or failed to correct the policies and procedures that played an integral part in the following negligent acts:

        a.     failed to alter the policies and procedures for dealing with suicidal inmates after the death of Justin Farver;

        b.     failed to ensure that Sandra Scott was placed on suicide watch, requiring 15 minute checks, despite the bond court's order that she posed a risk of danger to her self and others;

        c.     failed to ensure that Sandra Scott was placed in a cell with a roommate that could alert jail staff if she was exhibiting behavior indicating a desire to harm herself;

        d.     authorized the removal of the hooks on the coat racks placed in detainees' cells, thereby increasing the danger that the rack posed to suicidal inmates by leaving holes in the rack, which Gary Del Re knew, as a result of the death of Justin Farver on October 13, 1998, could accommodate and sustain a cloth or sheet sufficient to cause death by hanging;

17

e.    deprived Sandra Scott of housing in a hospital or medical ward when it knew that she needed to be in a closely monitored medical environment;

f.    had no policy or procedure in effect to monitor, supervise, or observe inmates or detainees who were suicide risks;

g.    had a policy in effect to house inmates or detainees who were suicide risks in physically and visually isolated cells;

h.    continued to contract with Correctional Medical Services, Inc. and Joel Mollner, for inmate health care even he reasonably should have known that both parties were not competent to care for suicidal individual; or

i.    as a matter of standard operating procedure, employed both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical and psychological care to inmates and detainees.

9.    As a proximate result of one or more of the aforesaid, Sandra Scott endured conscious pain and suffering, disability and disfigurement, prior to her death on September 29, 2003.

10.    As a proximate result of one or more of these actions/inactions, plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

11.    That had she survived, Decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

12.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

13.    Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

14.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased,

18

and brings this action pursuant to the Illinois Wrongful Death Act, for the benefit of her daughter Breanna Workman, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Charles De Filippo, Individually and as an agent or employee of Office of the Lake County Sheriff, for an amount in excess of $100,000.00, and for all other legal and equitable remedies available under state and federal law.

### Count VII
### (Plaintiff v. Rodney K. Holmes/Sheriff of Lake County)(42 U.S.C. §1983)

1.      From March 26, 2003, until and including March 29, 2003, and at all times material, the defendant was a correctional officer working at the Lake County jail and an employee of the Sheriff of Lake County, the entity that owned, operated, and maintained the Lake County jail for purposes of housing inmates and pretrial detainees, and, as such, was acting under color of State Law.

2.      From March 26, 2003 until and including March 29, 2003, this defendant was acting within the course of her agency and/or employment relationship with the Sheriff of Lake County.

3.      From March 26, 2003 until and including March 29, 2003, Plaintiff's decedent Sandra Scott was a pretrial detainee in the care, custody and control of the defendant, who was responsible for processing Sandra Scott and assigning her check schedule.

4.      On March 26, 2004 until and including March 29, 2003, and at all times material, the defendant knew that Sandra Scott was a pretrial detainee with a high risk of self-destructive behavior, including suicide and knew that it was ordered that she be checked on every 15 minutes.

5.      On March 26, 2003, Sandra Scott came under the actual care, custody and control of the defendant who therefore became responsible for Sandra Scott's health, safety and overall welfare.

19

6.    From March 26, 2003 until and including March 29, 2003, notwithstanding the

duties and obligations described above this defendant, Individually and as an agent or employee

of the Office of the Lake County Sheriff, and each of them, committed one or more of the following

acts of utter indifference or conscious disregard:

a.    failed to ensure that Sandra Scott was placed on suicide watch, requiring 15 minute checks, despite the bond court's order that she posed a risk of danger to her self and others;

b.    failed to ensure that Sandra Scott was placed in a cell with a roommate that could alert jail staff if she was exhibiting behavior indicating a desire to harm herself;

c.    allowed to exist or failed to correct or remedy a known hazard and means of suicide in that it failed to correct and remove the holes under the shelves in detainee's cells, despite knowing, though the death of Justin Farver on October 13, 1998, that this was an area that could accommodate and sustain a cloth or sheet to cause death by hanging;

d.    failed to monitor Sandra Scott on 15 minute or less checks;

e.    failed or intentionally deprived Sandra Scott of housing in a hospital or medical ward when it knew that she needed to be in a closely monitored medical environment;

f.    had no policy or procedure in effect to monitor, supervise, or observe inmates or detainees who were suicide risks;

g.    had a policy in effect to house inmates or detainees who were suicide risks in physically and visually isolated cells;

h.    as a matter of standard operating procedure, employed both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical and psychological care to inmates and detainees.

7.    As a direct and proximate result of one or more of the foregoing wrongful acts and

20

omissions, Plaintiff's decedent Sandra Scott was deprived of rights, privileges and immunities guaranteed to her by the Eighth and Fourteenth Amendments to the United States Constitution, namely, she hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

8.     Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

9.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 42 U.S.C. 1983, for the benefit of her daughter Breanna Workman, her parents and siblings, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Rodney Holmes, Individually and as an employee or agent of the Office of the Lake County Sheriff, for an amount in excess of $100,000.00, plus punitive damages in an amount to be set by the jury, costs, and attorneys' fees, and for all other legal and equitable remedies available under state and federal law.

21

## Count VIII
### (Plaintiff v. Rodney K. Holmes/Sheriff of Lake County)
### (State Law Claims/Wrongful Death/Survival)

1.      From March 26, 2003, until and including March 29, 2003, and at all times material,
the defendant was a correctional officer working at the Lake County jail and an employee of the
Sheriff of Lake County, the entity that owned, operated, and maintained the Lake County jail for
purposes of housing inmates and pretrial detainees, and, as such, was acting under color of State
Law.

2.      From March 26, 2003 until and including March 29, 2003, this defendant was acting
within the course of her agency and/or employment relationship with the Sheriff of Lake County.

3.      From March 26, 2003 until and including March 29, 2003, Plaintiff's decedent
Sandra Scott was a pretrial detainee in the care, custody and control of the defendant, who was
responsible for processing Sandra Scott and assigning her check schedule.

4.      On March 26, 2004 until and including March 29, 2003, and at all times material, the
defendant knew that Sandra Scott was a pretrial detainee with a high risk of self-destructive
behavior, including suicide and knew that it was ordered that she be checked on every 15 minutes.

5.      On March 26, 2003, Sandra Scott came under the actual care, custody and control
of the defendant who therefore became responsible for Sandra Scott's health, safety and overall
welfare.

6.      From March 26, 2003 until and including March 29, 2003, notwithstanding the
duties and obligations described above this defendant, Individually and as an agent or employee
of the Office of the Lake County Sheriff, and each of them, committed one or more of the following
negligent acts:

22

a.    failed to ensure that Sandra Scott was placed on suicide watch, requiring 15 minute checks, despite the bond court's order that she posed a risk of danger to her self and others;

b.    failed to ensure that Sandra Scott was placed in a cell with a roommate that could alert jail staff if she was exhibiting behavior indicating a desire to harm herself;

c.    allowed to exist or failed to correct or remedy a known hazard and means of suicide in that it failed to correct and remove the holes under the shelves in detainee's cells, despite knowing, though the death of Justin Farver on October 13, 1998, that this was an area that could accommodate and sustain a cloth or sheet to cause death by hanging;

d.    failed to monitor Sandra Scott on 15 minute or less checks;

e.    failed or intentionally deprived Sandra Scott of housing in a hospital or medical ward when it knew that she needed to be in a closely monitored medical environment;

f.    had no policy or procedure in effect to monitor, supervise, or observe inmates or detainees who were suicide risks;

g.    had a policy in effect to house inmates or detainees who were suicide risks in physically and visually isolated cells;

h.    as a matter of standard operating procedure, employed both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical and psychological care to inmates and detainees.

7.    As a proximate result of one or more of these actions/inactions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

8.    As a proximate result of one or more of the aforesaid, Sandra Scott endured conscious pain and suffering, disability and disfigurement, prior to her death on September 29, 2003.

23

9.     That had she survived, Decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

10.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

11.     Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

12.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Illinois Wrongful Death Act, for the benefit of her daughter Breanna Workman, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Rodney Holmes, Individually and as an employee or agent of the Office of the Lake County Sheriff, for an amount in excess of $100,000.00, and for all other legal and equitable remedies available under state and federal law.

### Count IX
### (Plaintiff v. Peter C. Dickson/Sheriff of Lake County)
### (42 U.S.C. §1983)

1.     From March 26, 2003, until and including March 29, 2003, and at all times material, the defendant was a correctional officer working at the Lake County jail and an employee of the Sheriff of Lake County, the entity that owned, operated, and maintained the Lake County jail for purposes of housing inmates and pretrial detainees, and, as such, was acting under color of State Law.

2.     From March 26, 2003 until and including March 29, 2003, this defendant was acting within the course of her agency and/or employment relationship with the Sheriff of Lake County.

3.     From March 26, 2003 until and including March 29, 2003, Plaintiff's decedent

24

Sandra Scott was a pretrial detainee in the care, custody and control of the defendant, who was responsible for processing Sandra Scott and assigning her check schedule.

    4.     On March 26, 2004 until and including March 29, 2003, and at all times material, the defendant knew that Sandra Scott was a pretrial detainee with a high risk of self-destructive behavior, including suicide and knew that it was ordered that she be checked on every 15 minutes.

    5.     On March 26, 2003, Sandra Scott came under the actual care, custody and control of the defendant who therefore became responsible for Sandra Scott's health, safety and overall welfare.

    6.     From March 26, 2003 until and including March 29, 2003, notwithstanding the duties and obligations described above, the defendant, Individually and as an agent or employee of the Sheriff of Lake County, committed one or more of the following acts of utter indifference or conscious disregard:

        a.     failed to ensure that Sandra Scott was placed on suicide watch, requiring 15 minute checks, despite the bond court's order that she posed a risk of danger to her self and others;

        b.     failed to ensure that Sandra Scott was placed in a cell with a roommate that could alert jail staff if she was exhibiting behavior indicating a desire to harm herself;

        c.     allowed to exist or failed to correct or remedy a known hazard and means of suicide in that it failed to correct and remove the holes under the shelves in detainee's cells, despite knowing, though the death of Justin Farver on October 13, 1998, that this was an area that could accommodate and sustain a cloth or sheet to cause death by hanging;

        d.     failed to monitor Sandra Scott on 15 minute or less checks;

        e.     failed or intentionally deprived Sandra Scott of housing in a hospital or medical ward when it knew that she needed to be in a closely monitored medical environment;

25

f.    had no policy or procedure in effect to monitor, supervise, or observe inmates or detainees who were suicide risks;

g.    had a policy in effect to house inmates or detainees who were suicide risks in physically and visually isolated cells;

h.    as a matter of standard operating procedure, employed both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical and psychological care to inmates and detainees.

7.    As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott was deprived of rights, privileges and immunities guaranteed to her by the Eighth and Fourteenth Amendments to the United States Constitution, namely, she hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

8.    Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

9.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 42 U.S.C. §1983, for the benefit of her daughter Breanna Workman, her parents and siblings, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Peter Dickson, Individually and as an agent or employee of the Office of the Lake County Sheriff, for an amount in excess of $100,000.00, plus punitive damages in an amount to be set by the jury, costs, and attorneys' fees, and for all other legal and equitable remedies available under state and federal law.

26

## Count X
### (Plaintiff v. Peter C. Dickson/Sheriff of Lake County)
### (State Law Claims/Wrongful Death/Survival)

1.      From March 26, 2003, until and including March 29, 2003, and at all times material,

the defendant was a correctional officer working at the Lake County jail and an employee of the

Sheriff of Lake County, the entity that owned, operated, and maintained the Lake County jail for

purposes of housing inmates and pretrial detainees, and, as such, was acting under color of State

Law.

2.      From March 26, 2003 until and including March 29, 2003, this defendant was acting

within the course of her agency and/or employment relationship with the Sheriff of Lake County.

3.      From March 26, 2003 until and including March 29, 2003, Plaintiff's decedent

Sandra Scott was a pretrial detainee in the care, custody and control of the defendant, who was

responsible for processing Sandra Scott and assigning her check schedule.

4.      On March 26, 2004 until and including March 29, 2003, and at all times material, the

defendant knew that Sandra Scott was a pretrial detainee with a high risk of self-destructive

behavior, including suicide and knew that it was ordered that she be checked on every 15 minutes.

5.      On March 26, 2003, Sandra Scott came under the actual care, custody and control

of the defendant who therefore became responsible for Sandra Scott's health, safety and overall

welfare.

6.      From March 26, 2003 until and including March 29, 2003, notwithstanding the

duties and obligations described above, the defendant, Individually and as an agent or employee

of the Sheriff of Lake County, committed one or more of the following negligence acts of utter

indifference or conscious disregard:

27

a.    failed to ensure that Sandra Scott was placed on suicide watch, requiring 15 minute checks, despite the bond court's order that she posed a risk of danger to her self and others;

b.    failed to ensure that Sandra Scott was placed in a cell with a roommate that could alert jail staff if she was exhibiting behavior indicating a desire to harm herself;

c.    allowed to exist or failed to correct or remedy a known hazard and means of suicide in that it failed to correct and remove the holes under the shelves in detainee's cells, despite knowing, though the death of Justin Farver on October 13, 1998, that this was an area that could accommodate and sustain a cloth or sheet to cause death by hanging;

d.    failed to monitor Sandra Scott on 15 minute or less checks;

e.    failed or intentionally deprived Sandra Scott of housing in a hospital or medical ward when it knew that she needed to be in a closely monitored medical environment;

f.    had no policy or procedure in effect to monitor, supervise, or observe inmates or detainees who were suicide risks;

g.    had a policy in effect to house inmates or detainees who were suicide risks in physically and visually isolated cells;;

h.    as a matter of standard operating procedure, employed both directly and by contract, unqualified, poorly trained and incompetent personnel to provide medical and psychological care to inmates and detainees.

7.    As a proximate result of one or more of these actions/inactions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

8.    As a proximate result of one or more of the aforesaid, Sandra Scott endured conscious pain and suffering, disability and disfigurement, prior to her death on September 29, 2003.

28

9.    That had she survived, Decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

10.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

11.    Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

12.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Illinois Wrongful Death Act, for the benefit of her daughter Breanna Workman, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Peter Dickson, Individually and as an agent or employee of the Office of the Lake County Sheriff, for an amount in excess of $100,000.00, and for all other legal and equitable remedies available under state and federal law.

## Count XI
### (Plaintiff v. Correctional Medical Service, Inc.)
### (42 U.S.C. §1983)

1.    At all relevant times, including March 26, 2003 to and including March 29, 2003, defendant Correctional Medical Services, Inc. ("CMS") was a Missouri corporation, engaged in the business, for profit, of providing medical and psychological services to detainees and inmates of the Lake County Jail, including initial and continuing suicide risk evaluations, and specifically had contracted with Lake County and or the Lake County Sheriff to provide such services in the confines of the jail proper, and as such was therefore acting at all times under color of State Law.

2.    From March 26, 2003 to and including March 29, 2003, plaintiff's decedent Sandra

Scott was a detainee and inmate at the Lake County Jail, where she came under the medical and psychological care of defendant CMS during that time.

      3.      From March 26, 2003 to and including March 29, 2003, Sandra Scott was a high suicide risk, a fact which defendant CMS, through its agents and employees Joel Mollner, Genaline Japczyk, Karen Walker and Richard Wagner, M.D., among others, knew and documented.

      4.      Defendant CMS knew, from its prior experience with the suicide of Justin Farver on October 13, 1998, that its systems, policies, procedures, and personnel were ill-equipped, inadequate, unqualified and incompetent to do the initial and continuing suicide risk evaluations.

      5.      From March 26, 2003 to and including March 29, 2003, and at all times material, plaintiff's decedent Sandra Scott was a detainee and inmate at the Lake County Jail where she came under the medical and psychological care of defendant CMS during which time, and at all times, she was a high suicide risk, a fact which defendant CMS knew.

      6.      From March 26, 2003 to March 29, 2003, and at all times material, while plaintiff's decedent Sandra Scott was under its care, custody and control, the defendant CMS, through its agents and employees Joel Mollner, Genaline Japczyk, Karen Walker, and Richard Wagner, M.D., among others, committed one or more of the following acts of utter indifference and/or conscious disregard:

              a.      had in place policy and procedures which were not calculated to truly determine whether detainees or inmates at the Lake County Jail were at high risk for suicide;

              b.      did not train its personnel, employees and agents to properly, accurately or adequately evaluate the suicide risks of inmates and detainees.

              c.      did not train its personnel, employees and agents to properly, accurately or adequately be able to make valid and safe recommendations for the proper care and evaluation of inmates and detainees who were suicide risks;

       d.      regularly assigned poorly trained and unqualified employees and agents to evaluate detainees and inmates for suicide risk;

       e.      allowed to exist or failed to correct or remedy the failures inherent in their policies, procedures and personnel in that despite knowing through the death of Justin Farver on October 13, 1998, failed to take corrective action by modifying their procedures and policies, and hiring or retraining personnel so that the could provide competent and qualified personnel for evaluating the suicide risk of detainees and inmates.

7.      As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott was deprived of rights, privileges and immunities guaranteed to her by the Eighth and Fourteenth Amendments to the United States Constitution, namely, she hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

8.      Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

9.      Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 42 U.S.C. §1983, for the benefit of her daughter Breanna Workman, her parents and siblings, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Correctional Medical Services, Inc. for an amount in excess of $100,000.00, plus punitive damages in an amount to be set by the jury, costs, and attorneys' fees, and for all other legal and equitable remedies available under state and federal law.

### Count XII
### (Plaintiff v. Correctional Medical Services, Inc.)
### (State Law Claims/Wrongful Death/Survival)

1.      At all relevant times, including March 26, 2003 to and including March 29, 2003, defendant Correctional Medical Services, Inc. ("CMS") was a Missouri corporation, engaged in the business, for profit, of providing medical and psychological services to detainees and inmates of

31

the Lake County Jail, including initial and continuing suicide risk evaluations, and specifically had contracted with Lake County and or the Lake County Sheriff to provide such services in the confines of the jail proper, and as such was therefore acting at all times under color of State Law.

2.      From March 26, 2003 to and including March 29, 2003, plaintiff's decedent Sandra Scott was a detainee and inmate at the Lake County Jail, where she came under the medical and psychological care of defendant CMS during which time.

3.      From March 26, 2003 to and including March 29, 2003, Sandra Scott was a high suicide risk, a fact which defendant CMS, through its agents and employees, Joel Mollner, Genaline Japczyk, Karen Walker, and Richard Wagner, M.D., among others, knew and documented.

4.      Defendant CMS knew, from its prior experience with the suicide of Justin Farver on October 13, 1998, that its systems, policies, procedures, and personnel were ill-equipped, inadequate, unqualified and incompetent to do the initial and continuing suicide risk evaluations.

5.      From March 26, 2003 to and including March 29, 2003, and at all times material, plaintiff's decedent Sandra Scott was a detainee and inmate at the Lake County Jail where she came under the medical and psychological care of defendant CMS during which time, and at all times, she was a high suicide risk, a fact which defendant CMS knew.

6.      From March 26, 2003 to and including March 29, 2003, this defendant had a duty to exercise reasonable care in the care and treatment of Sandra Scott.

7.      From March 26, 2003 to March 29, 2003, and at all times material, while plaintiff's decedent Sandra Scott was under its care, custody and control, the defendant CMS, through its agents and employees Joel Mollner, Genaline Japczyk, Karen Walker, and Richard Wagner, M.D., among others, and each of them, breached their duties and were negligent in that they:

32

    a.    had in place policy and procedures which were not calculated to truly determine whether detainees or inmates at the Lake County Jail were at high risk for suicide;

    b.    did not train its personnel, employees and agents to properly, accurately or adequately evaluate the suicide risks of inmates and detainees.

    c.    did not train its personnel, employees and agents to properly, accurately or adequately be able to make valid and safe recommendations for the proper care and evaluation of inmates and detainees who were suicide risks;

    d.    regularly assigned poorly trained and unqualified employees and agents to evaluate detainees and inmates for suicide risk;

    e.    allowed to exist or failed to correct or remedy the failures inherent in their policies, procedures and personnel in that despite knowing through the death of Justin Farver on October 13, 1998, failed to take corrective action by modifying their procedures and policies, and hiring or retraining personnel so that the could provide competent and qualified personnel for evaluating the suicide risk of detainees and inmates.

7.    As a proximate result of one or more of these actions/inactions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

8.    As a proximate result of one or more of the aforesaid, Sandra Scott endured conscious pain and suffering, disability and disfigurement, prior to her death on September 29, 2003.

9.    That had she survived, Decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

10.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

11.    Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

33

12.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased,

and brings this action pursuant to the Illinois Wrongful Death Act, for the benefit of her daughter

Breanna Workman, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and

against defendant Correctional Medical Services, Inc. for an amount in excess of $100,000.00, and

for all other legal and equitable remedies available under state and federal

### Count XIII
### (Plaintiff v. Karen Walker/CMS) (42 U.S.C. §1983)

1.     At all relevant times, including March 26, 2003 to and including March 29, 2003,

defendant Correctional Medical Services, Inc. ("CMS") was a Missouri corporation, engaged in the

business, for profit, of providing medical and psychological services to detainees and inmates of

the Lake County Jail, including initial and continuing suicide risk evaluations, and specifically had

contracted with Lake County or the Lake County Sheriff to provide such services in the confines

of the jail proper, and as such was therefore acting at all times under color of State Law.

2.     From March 26, 2003 to and including March 29, 2003, and at all relevant and

material times, Defendant Karen Walker was an employee or agent of CMS.

3.     From March 26, 2003 to and including March 29, 2003, and at all relevant and

material times, decedent Sandra Scott was a detainee and inmate at the Lake County Jail, where

she came under the medical and psychological care of defendant CMS during which time.

4.     From March 26, 2003 to and including March 29, 2003, Sandra Scott was a high

suicide risk, a fact which defendant CMS and Walker knew and documented.

5.     Defendant Walker knew, from her prior experience with the suicide of Justin Farver

34

on October 13, 1998, that the systems, policies, procedures, and personnel she was responsible for at CMS were ill-equipped, inadequate, unqualified and incompetent to do the initial and continuing suicide risk evaluations.

6.      From March 26, 2003 to and including March 29, 2003, and at all times material, plaintiff's decedent Sandra Scott was a detainee and inmate at the Lake County Jail where she came under the medical and psychological care of defendant CMS and defendant Walker during which time, and at all times, she was a high suicide risk, a fact which defendant CMS knew.

7.      From March 26, 2003 to March 29, 2003, and at all times material, while plaintiff's decedent Sandra Scott was under its care, custody and control, the defendant Walker, Individually and as an employee or agent of CMS, and each of them, were negligent and committed one or more of the following acts of utter indifference and/or conscious disregard:

    a.      had in place policy and procedures which were not calculated to truly determine whether detainees or inmates at the Lake County Jail were at high risk for suicide;

    b.      did not train its personnel, employees and agents to properly, accurately or adequately evaluate the suicide risks of inmates and detainees.

    c.      did not train its personnel, employees and agents to properly, accurately or adequately be able to make valid and safe recommendations for the proper care and evaluation of inmates and detainees who were suicide risks;

    d.      regularly assigned poorly trained and unqualified employees and agents to evaluate detainees and inmates for suicide risk;

    e.      allowed to exist or failed to correct or remedy the failures inherent in CMS' policies, procedures and personnel in that despite knowing through the death of Justin Farver on October 13, 1998, failed to take corrective action by modifying CMS' procedures and policies, and hiring or retraining personnel so that CMS could provide competent and qualified personnel for evaluating the suicide risk of detainees and inmates.

35

8.      As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott was deprived of rights, privileges and immunities guaranteed to her by the Eighth and Fourteenth Amendments to the United States Constitution, namely, she hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

9.      Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

10.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 42 U.S.C. 1983, for the benefit of her daughter Breanna Workman, her parents and siblings, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Karen Walker, Individually and as an agent or employee of CMS, for an amount in excess of $100,000.00, plus punitive damages in an amount to be set by the jury, costs, and attorneys' fees, and for all other legal and equitable remedies available under state and federal law.

## Count XIV
### (Plaintiff v. Karen Walker/CMS)
### (State Law Claims/Wrongful Death/Survival)

1.      At all relevant times, including March 26, 2003 to and including March 29, 2003, defendant Correctional Medical Services, Inc. ("CMS") was a Missouri corporation, engaged in the business, for profit, of providing medical and psychological services to detainees and inmates of the Lake County Jail, including initial and continuing suicide risk evaluations, and specifically had contracted with Lake County or the Lake County Sheriff to provide such services in the confines of the jail proper, and as such was therefore acting at all times under color of State Law.

2.      From March 26, 2003 to and including March 29, 2003, and at all relevant and material times, Defendant Karen Walker was an employee or agent of CMS.

36

3.      From March 26, 2003 to and including March 29, 2003, and at all relevant and material times, decedent Sandra Scott was a detainee and inmate at the Lake County Jail, where she came under the medical and psychological care of defendant CMS during which time.

4.      From March 26, 2003 to and including March 29, 2003, Sandra Scott was a high suicide risk, a fact which defendant CMS and Walker knew and documented.

5.      Defendant Walker knew, from her prior experience with the suicide of Justin Farver on October 13, 1998, that the systems, policies, procedures, and personnel she was responsible for at CMS were ill-equipped, inadequate, unqualified and incompetent to do the initial and continuing suicide risk evaluations.

6.      From March 26, 2003 to and including March 29, 2003, and at all times material, plaintiff's decedent Sandra Scott was a detainee and inmate at the Lake County Jail where she came under the medical and psychological care of defendant CMS and defendant Walker during which time, and at all times, she was a high suicide risk, a fact which defendant CMS knew.

7.      From March 26, 2003 to March 29, 2003, and at all times material, while plaintiff's decedent Sandra Scott was under its care, custody and control, the defendant Walker, Individually and as an employee or agent of CMS, and each of them, were negligent and committed one or more of the following negligent acts:

a.      had in place policy and procedures which were not calculated to truly determine whether detainees or inmates at the Lake County Jail were at high risk for suicide;

b.      did not train its personnel, employees and agents to properly, accurately or adequately evaluate the suicide risks of inmates and detainees.

c.      did not train its personnel, employees and agents to properly, accurately or adequately be able to make valid and safe recommendations for the proper care and evaluation of inmates and detainees who were suicide risks;

37

d.    regularly assigned poorly trained and unqualified employees and agents to evaluate detainees and inmates for suicide risk;

e.    allowed to exist or failed to correct or remedy the failures inherent in CMS' policies, procedures and personnel in that despite knowing through the death of Justin Farver on October 13, 1998, failed to take corrective action by modifying CMS' procedures and policies, and hiring or retraining personnel so that CMS could provide competent and qualified personnel for evaluating the suicide risk of detainees and inmates.

8.    As a proximate result of one or more of these actions/inactions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

9.    As a proximate result of one or more of the aforesaid, Sandra Scott endured conscious pain and suffering, disability and disfigurement, prior to her death on September 29, 2003.

10.    That had she survived, Decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

11.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

12.    Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

13.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Illinois Wrongful Death Act, for the benefit of her daughter Breanna Workman, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Karen Walker, Individually and as an agent or employee of CMS, for an amount

38

in excess of $100,000.00, and for all other legal and equitable remedies available under state and federal law.

**Count XV**
**(Plaintiff v. Joel Mollner, L.C.S.W./CMS)**
**(42 U.S.C. §1983)**

1.      At all relevant times, including March 26, 2003 to and including March 29, 2003, defendant Correctional Medical Services, Inc. ("CMS") was a Missouri corporation, engaged in the business, for profit, of providing medical and psychological services to detainees and inmates of the Lake County Jail, including initial and continuing suicide risk evaluations, and specifically had contracted with Lake County and or the Lake County Sheriff to provide such services in the confines of the jail proper, and as such was therefore acting at all times under color of State Law.

2.      From March 26, 2003 to and including March 29, 2003, and at all relevant and material times, Defendant Joel Mollner was a duly licensed clinical social worker, an employee or agent of CMS, and was engaged in providing social services, including specifically performing mental health intake evaluations for inmates and detainees of the Lake County Jail.

3.      From March 26, 2003 to and including March 29, 2003, and at all times relevant and material hereto, plaintiff's decedent Sandra Scott was a detainee and inmate at the Lake County Jail, where she came under the care and management of defendant Joel Mollner.

4.      From March 26, 2003 to and including March 29, 2003, Sandra Scott was a high suicide risk, a fact which defendant Mollner knew and documented.

5.      Defendant Mollner knew, from his prior experience with the suicide of Justin Farver on October 13, 1998, that the systems, policies, procedures, and personnel at CMS were ill-equipped, inadequate, unqualified and incompetent to do the initial and continuing suicide risk evaluations.

6.      From March 26, 2003 to and including March 29, 2003, and all times relevant and

39

material, while the plaintiff's decedent Sandra Scott was under his care, the defendant Mollner, Individually and as an agent or employee of CMS, and each of them, committed one or more of the following acts of utter indifference and/or conscious disregard:

      a.      failed to determine that Sandra Scott was a high suicide risk;

      b.      failed to alert the jail shift commander or other jail supervisors that Sandra Scott was a high suicide risk;

      c.      failed to refer plaintiff's decedent for a mental health evaluation;\

      d.      failed to follow-up to ensure that a mental health evaluation occurred on a timely basis;

      e.      took an incomplete and inaccurate history and evaluation;

      f.      failed to properly communicate within the correctional department and CMS regarding the mental stability or instability of Sandra Scott during her incarceration;

      g.      failed to accurately or completely document plaintiff's condition;

      h.      failed to recommend that Sandra Scott be checked every 15 minutes;

      i.      failed to recommend that Sandra Scott be kept on continuous visual observation;

      j.      failed to follow procedures and polices regarding the proper taking of a history, and evaluation;

      k.      failed to recommend that Sandra Scott be placed in a room with a roommate;

    7.      As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott was deprived of rights, privileges and immunities guaranteed to her by the Eighth and Fourteenth Amendments to the United States Constitution, namely, she hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

40

8.      Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

9.      Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 42 U.S.C. §1983, for the benefit of her daughter Breanna Workman, her parents and siblings, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Joel Mollner, Individually and as an agent or employee of CMS, for an amount in excess of $100,000.00, plus punitive damages in an amount to be set by the jury, costs, and attorneys' fees, and for all other legal and equitable remedies available under state and federal law.

### Count XVI
### (Plaintiff v. Joel Mollner, L.C.S.W./CMS)
### (State Law Claims/Wrongful Death/Survival)

1.      At all relevant times, including March 26, 2003 to and including March 29, 2003, defendant Correctional Medical Services, Inc. ("CMS") was a Missouri corporation, engaged in the business, for profit, of providing medical and psychological services to detainees and inmates of the Lake County Jail, including initial and continuing suicide risk evaluations, and specifically had contracted with Lake County and or the Lake County Sheriff to provide such services in the confines of the jail proper.

2.      From March 26, 2003 to and including March 29, 2003, and at all relevant and material times, Defendant Joel Mollner was a duly licensed clinical social worker, an employee or agent of CMS, and was engaged in providing social services, including specifically performing mental health intake evaluations for inmates and detainees of the Lake County Jail.

3.      From March 26, 2003 to and including March 29, 2003, and at all times relevant and

41

material hereto, plaintiff's decedent Sandra Scott was a detainee and inmate at the Lake County

Jail, where she came under the care and management of defendant Joel Mollner.

4.      From March 26, 2003 to and including March 29, 2003, Sandra Scott was a high

suicide risk, a fact which defendant Mollner knew and documented.

5.      Defendant Mollner, knew, from his prior experience with the suicide of Justin Farver

on October 13, 1998, that the systems, policies, procedures, and personnel at CMS were ill-

equipped, inadequate, unqualified and incompetent to do the initial and continuing suicide risk

evaluations.

6.      Defendant Mollner, at all relevant times, was under a duty to exercise due care in

the care and treatment of Sandra Scott.

7.      From March 26, 2003 to and including March 29, 2003, and all times relevant and

material, while the plaintiff's decedent Sandra Scott was under his care, the defendant Mollner,

Individually and as an employee or agent of CMS, and each of them were negligent in that they:

    a.      failed to determine that Sandra Scott was a high suicide risk;

    b.      failed to alert the jail shift commander or other jail supervisors that Sandra
            Scott was a high suicide risk;

    c.      failed to refer plaintiff's decedent for a mental health evaluation;

    d.      failed to follow-up to ensure that a mental health evaluation occurred on a
            timely basis;

    e.      took an incomplete and inaccurate history and evaluation;

    f.      failed to properly communicate within the correctional department and CMS
            regarding the mental stability or instability of Sandra Scott during her
            incarceration;

    g.      failed to accurately or completely document plaintiff's condition;

42

h.     failed to recommend that Sandra Scott be checked every 15 minutes;

i.     failed to recommend that Sandra Scott be kept on continuous visual observation;

j.     failed to follow procedures and polices regarding the proper taking of a history, and evaluation;

k.     failed to recommend that Sandra Scott be placed in a room with a roommate;

8.     As a proximate result of one or more of these actions/inactions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

9.     As a proximate result of one or more of the aforesaid, Sandra Scott endured conscious pain and suffering, disability and disfigurement, prior to her death on September 29, 2003.

10.    That had she survived, Decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

11.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

12.    Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

13.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Illinois Wrongful Death Act, for the benefit of her daughter Breanna Workman, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Joel Mollner, Individually and as an agent or employee of CMS, for an amount

43

in excess of $100,000.00 and for all other legal and equitable remedies available under state and federal law

## Count XVII
### (Plaintiff v. Genaline Japczyk, R.N./CMS)
### (42 U.S.C. §1983)

1.      At all relevant times, including March 26, 2003 to and including March 29, 2003,

defendant Correctional Medical Services, Inc. ("CMS") was a Missouri corporation, engaged in the business, for profit, of providing medical and psychological services to detainees and inmates of the Lake County Jail, including initial and continuing suicide risk evaluations, and specifically had contracted with Lake County and or the Lake County Sheriff to provide such services in the confines of the jail proper.

2.      From March 26, 2003 to and including March 29, 2003, and at all relevant and

material times, Defendant Genaline Japczyk was a duly licensed registered nurse, an employee or agent of CMS, and was engaged in providing psychological nursing and mental health intake evaluations for inmates and detainees of the Lake County Jail.

3.      From March 26, 2003 to and including March 29, 2003, and at all times relevant and

material hereto, plaintiff's decedent Sandra Scott was a detainee and inmate at the Lake County Jail, where she came under the care and management of defendant Genaline Japczyk.

4.      From March 26, 2003 to and including March 29, 2003, Sandra Scott was a high

suicide risk, a fact which defendant Japczyk knew and documented.

5.      From March 26, 2003 to and including March 29, 2003, this defendant had a duty

to possess and apply the knowledge and use the skill and care of a reasonably well qualified nurse in the same field under similar circumstances.

6.      From March 26, 2003 to and including March 29, 2003, and all times relevant and

44

material, while the plaintiff's decedent Sandra Scott was under her care, the defendant Japczyk,

Individually and as an agent or employee of CMS, and each of them, were negligent and committed

one or more of the following acts of utter indifference and/or conscious disregard:

     a.     failed to determine that Sandra Scott was a high suicide risk;

     b.     failed to alert the jail shift commander or other jail supervisors that Sandra Scott was a high suicide risk;

     c.     failed to refer plaintiff's decedent for a mental health evaluation;

     d.     failed to follow-up to ensure that a mental health evaluation occurred on a timely basis;

     e.     took an incomplete and inaccurate history and evaluation;

     f.     failed to properly communicate within the correctional department and CMS regarding the mental stability or instability of Sandra Scott during her incarceration;

     g.     failed to accurately or completely document plaintiff's condition;

     h.     failed to recommend that Sandra Scott be checked every 15 minutes;

     i.     failed to recommend that Sandra Scott be kept on continuous visual observation;

     j.     failed to follow procedures and polices regarding the proper taking of a history, and evaluation;

     k.     failed to recommend that Sandra Scott be placed in a room with a roommate;

     7.     As a direct and proximate result of one or more of the foregoing wrongful acts and

omissions, Plaintiff's decedent hung herself in her jail cell on March 29, 2003 at approximately

12:20 p.m.

     8.     As a direct and proximate result of one or more of the foregoing wrongful acts and

omissions, Plaintiff's decedent Sandra Scott was deprived of rights, privileges and immunities guaranteed to her by the Eighth and Fourteenth Amendments to the United States Constitution, namely, she hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

9.      Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

10.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 42 U.S.C. §1983, for the benefit of her daughter Breanna Workman, her parents and siblings, and/or any other person entitled to claim damages under state or federal law.

11.     Pursuant to the Illinois Code of Civil Procedure, Section 622, the affidavit of the Attorney for the Plaintiff and a report of a healthcare professional is attached hereto.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Genaline Japczyk, Individually and as an agent or employee of CMS, for an amount in excess of $100,000.00 and for all other legal and equitable remedies available under state and federal law.

46

**Count XVIII**

**(Plaintiff v. Genaline Japczyk, R.N./CMS)**

**(State Law Claims/Negligence/Survival)**

1.     At all relevant times, including March 26, 2003 to and including March 29, 2003,

defendant Correctional Medical Services, Inc. ("CMS") was a Missouri corporation, engaged in the

business, for profit, of providing medical and psychological services to detainees and inmates of

the Lake County Jail, including initial and continuing suicide risk evaluations, and specifically had

contracted with Lake County and or the Lake County Sheriff to provide such services in the

confines of the jail proper.

2.     From March 26, 2003 to and including March 29, 2003, and at all relevant and

material times, Defendant Genaline Japczyk was a duly licensed registered nurse, an employee

or agent of CMS, and was engaged in providing psychological nursing and mental health intake

evaluations for inmates and detainees of the Lake County Jail.

3.     From March 26, 2003 to and including March 29, 2003, and at all times relevant and

material hereto, plaintiff's decedent Sandra Scott was a detainee and inmate at the Lake County

Jail, where she came under the care and management of defendant Genaline Japczyk.

4.     From March 26, 2003 to and including March 29, 2003, Sandra Scott was a high

suicide risk, a fact which defendant Japczyk knew and documented.

5.     From March 26, 2003 to and including March 29, 2003, this defendant had a duty

to possess and apply the knowledge and use the skill and care of a reasonably well qualified nurse

in the same field under similar circumstances.

6.     From March 26, 2003 to and including March 29, 2003, and all times relevant and

material, while the plaintiff's decedent Sandra Scott was under her care, the defendant Japczyk,

Individually and as an agent or employee of CMS, and each of them, were negligent and committed

one or more of the following acts of utter indifference and/or conscious disregard:

47

a.    failed to determine that Sandra Scott was a high suicide risk;

b.    failed to alert the jail shift commander or other jail supervisors that Sandra Scott was a high suicide risk;

c.    failed to refer plaintiff's decedent for a mental health evaluation;

d.    failed to follow-up to ensure that a mental health evaluation occurred on a timely basis;

e.    took an incomplete and inaccurate history and evaluation;

f.    failed to properly communicate within the correctional department and CMS regarding the mental stability or instability of Sandra Scott during her incarceration;

g.    failed to accurately or completely document plaintiff's condition;

h.    failed to recommend that Sandra Scott be checked every 15 minutes;

i.    failed to recommend that Sandra Scott be kept on continuous visual observation;

j.    failed to follow procedures and polices regarding the proper taking of a history, and evaluation;

k.    failed to recommend that Sandra Scott be placed in a room with a roommate.

7.    As a proximate result of one or more of these actions/inactions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

8.    As a proximate result of one or more of the aforesaid, Sandra Scott endured conscious pain and suffering, disability and disfigurement, prior to her death on September 29, 2003.

48

9.    That had she survived, Decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

10.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

11.    Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

12.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Illinois Wrongful Death Act, for the benefit of her daughter Breanna Workman, and/or any other person entitled to claim damages under state or federal law.

13.    Pursuant to the Illinois Code of Civil Procedure, Section 6-22, the affidavit of the Attorney for the Plaintiff and a report of a healthcare professional is attached hereto.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Genaline Japczyk, Individually and as an agent or employee of CMS, for an amount in excess of $100,000.00 and for all other legal and equitable remedies available under state and federal law.

49

## Count XIX
### (Plaintiff v. Richard Wagner, M.D./CMS)(42 U.S.C. §1983)

1.     At all relevant times, including March 26, 2003 to and including March 29, 2003,

defendant Correctional Medical Services, Inc. ("CMS") was a Missouri corporation, engaged in the

business, for profit, of providing medical and psychological services to detainees and inmates of

the Lake County Jail, including initial and continuing suicide risk evaluations, and specifically had

contracted with Lake County and or the Lake County Sheriff to provide such services in the

confines of the jail proper, and as such was therefore acting at all times under color of State Law.

2.     From March 26, 2003 to and including March 29, 2003, and at all relevant and

material times, Defendant Richard Wagner was a duly licensed medical doctor, and was engaged

in providing medical coverage for inmates and detainees of the Lake County Jail.

3.     From March 26, 2003 to and including March 29, 2003, and at all times relevant and

material hereto, plaintiff's decedent Sandra Scott was a detainee and inmate at the Lake County

Jail, where she came under the care and management of defendant Richard Wagner.

4.     From March 26, 2003 to and including March 29, 2003, Sandra Scott was a high

suicide risk, a fact which, by virtue of numerous documents, including the evaluations by Nurse

Japczyk and LSCW Moller, he knew.

5.     From March 26, 2003 to and including March 29, 2003, this defendant had a duty

to possess and apply the knowledge and use the skill and care of a reasonably well qualified

medical doctor in the same field under similar circumstances.

6.     From March 26, 2003 to and including March 29, 2003, and all times relevant and

material, while the plaintiff's decedent Sandra Scott was under his care, the defendant Richard

Wagner, Individually and as an agent or employee of CMS, committed one or more of the following

acts of utter indifference and/or conscious disregard:

50

a.    failed to determine that Sandra Scott was a high suicide risk;

b.    failed to alert the jail shift commander or other jail supervisors that Sandra Scott was a high suicide risk;

c.    failed to refer plaintiff's decedent for a mental health evaluation;

d.    failed to follow-up to ensure that a mental health evaluation occurred on a timely basis;

e.    took an incomplete and inaccurate history and evaluation;

f.    failed to properly communicate within the correctional department and CMS regarding the mental stability or instability of Sandra Scott during her incarceration;

g.    failed to accurately or completely document plaintiff's condition;

h.    failed to recommend that Sandra Scott be checked every 15 minutes;

i.    failed to recommend that Sandra Scott be kept on continuous visual observation;

j.    failed to follow procedures and polices regarding the proper taking of a history, and evaluation;

k.    failed to recommend that Sandra Scott be placed in a room with a roommate;

7.    As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott was deprived of rights, privileges and immunities guaranteed to her by the Eighth and Fourteenth Amendments to the United States Constitution, namely, she hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

8.    Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

9.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased,

51

and brings this action pursuant to 42 U.S.C. §1983, for the benefit of her daughter Breanna Workman, her parents and siblings, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Richard Wagner, M.D., Individually and as an agent or employee of CMS, for an amount in excess of $100,000.00, plus punitive damages in an amount to be set by the jury, costs, and attorneys' fees, and for all other legal and equitable remedies available under state and federal law.

### Count XX
### (Plaintiff v. Richard Wagner, M.D./CMS)
### (State Law Claims/Wrongful Death/Survival)

1. At all relevant times, including March 26, 2003 to and including March 29, 2003, defendant Correctional Medical Services, Inc. ("CMS") was an Missouri corporation, engaged in the business, for profit, of providing medical and psychological services to detainees and inmates of the Lake County Jail, including initial and continuing suicide risk evaluations, and specifically had contracted with Lake County and or the Lake County Sheriff to provide such services in the confines of the jail proper.

2. From March 26, 2003 to and including March 29, 2003, and at all relevant and material times, Defendant Richard Wagner was a duly licensed medical doctor, and was engaged in providing medical coverage for inmates and detainees of the Lake County Jail.

3. From March 26, 2003 to and including March 29, 2003, and at all times relevant and material hereto, plaintiff's decedent Sandra Scott was a detainee and inmate at the Lake County Jail, where she came under the care and management of defendant Richard Wagner.

4. From March 26, 2003 to and including March 29, 2003, Sandra Scott was a high

52

suicide risk, a fact which, by virtue of numerous documents, including the evaluations by Nurse Japczyk and LSCW Moller, he knew.

5.      From March 26, 2003 to and including March 29, 2003, this defendant had a duty to possess and apply the knowledge and use the skill and care of a reasonably well qualified medical doctor in the same field under similar circumstances.

6.      From March 26, 2003 to and including March 29, 2003, and all times relevant and material, while the plaintiff's decedent Sandra Scott was under his care, the defendant Richard Wagner, Individually and as an agent or employee of CMS, CMS and each of them, were negligent in that they:

  a. failed to determine that Sandra Scott was a high suicide risk;

  b. failed to alert the jail shift commander or other jail supervisors that Sandra Scott was a high suicide risk;

  c. failed to refer plaintiff's decedent for a mental health evaluation;

  d. failed to follow-up to ensure that a mental health evaluation occurred on a timely basis;

  e. took an incomplete and inaccurate history and evaluation;

  f. failed to properly communicate within the correctional department and CMS regarding the mental stability or instability of Sandra Scott during her incarceration;

  g. failed to accurately or completely document plaintiff's condition;

  h. failed to recommend that Sandra Scott be checked every 15 minutes;

  i. failed to recommend that Sandra Scott be kept on continuous visual observation;

  j. failed to follow procedures and polices regarding the proper taking of a history, and evaluation;

53

k.  failed to recommend that Sandra Scott be placed in a room with a roommate;

7.  As a proximate result of one or more of these actions/inactions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

8.  As a proximate result of one or more of the aforesaid, Sandra Scott endured conscious pain and suffering, disability and disfigurement, prior to her death on September 29, 2003.

9.  That had she survived, Decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

10.  Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

11.  Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

12.  Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Illinois Wrongful Death Act, for the benefit of her daughter Breanna Workman, and/or any other person entitled to claim damages under state or federal law.

13.  Pursuant to the Illinois Code of Civil Procedure, Section 622, the affidavit of the Attorney for the Plaintiff and a report of a healthcare professional is attached hereto.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Richard Wagner, M.D. for an amount in excess of $100,000.00, and for all other legal and equitable remedies available under state and federal law.

54

## Count XXI
### (Plaintiff v. John V. Dunne, PhD) (42 U.S.C. §1983)

1.    At all relevant times, including March 26, 2003 to and including March 29, 2003,

defendant John Dunne was a duly licensed psychologist who did business with Lake County and/or

the Sheriff of Lake County, namely Dr. Dunne would, for profit, provide his professional assessment

of detainees and inmates of the Lake County Jail, for their fitness to stand trial and/or for evaluating

their risk of harming themselves or others.

2.    On March 26, 2003, Lake County Circuit Court Associate Judge Victoria Martin

entered an Order which ordered Dr. John Dunne and/or Karen Chantry, licensed clinical

psychologists, to examine Sandra Scott to determine her fitness to stand trial and to determine her

danger to herself and others, thus, Dr. Dunne at all times was acting under color of State Law.

3.    By virtue of this Order, the defendant Dunne was under a duty to exercise

reasonable care in terms of scheduling and evaluating Sandra Scott.

4.    By virtue of the Order, and its language that an evaluation was needed to assess

the danger Sandra Scott posed to herself and others, Dr. Dunne was under a duty to examine

Sandra Scott forthwith, or as soon as possible under the circumstances.

5.    From March 26, 2003 to and including March 29, 2003, this defendant had a duty

to possess and apply the knowledge and use the skill and care of a reasonably well qualified

psychologist under similar circumstances.

6.    By failing on March 26, 2003, March 27, 2003, March 28, 2003 or March 29, 2003,

to go to the Lake County Jail to perform the evaluation on Sandra Scott, Dr. Dunne was acting with

utter indifference or conscious disregard.

7.    A reasonably well qualified and competent psychologist would have visited the Lake

55

County Jail on March 26, 2003, March 27, 2003, March 28, 2003 or March 29, 2003, and would have prepared a report that she was highly suicidal and made the appropriate arrangements to get her in a secure hospital setting where she could be continuously monitored.

8.     Had such a visit and evaluation occurred, more likely than not, it would have resulted in Sandra Scott being placed in a secure hospital setting where she could be continuously monitored, and her suicide and death would have been avoided.

9.     As a proximate result of the failures of Dr. Dunne identified above, the decedent Sandra Scott hung herself in her jail cell on March 29, 2003.

10.     As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott was deprived of rights, privileges and immunities guaranteed to her by the Eighth and Fourteenth Amendments to the United States Constitution, namely, she hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

11.     Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman date of birth April 10, 2001.

12.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 42 U.S.C. §1983, for the benefit of her daughter Breanna Workman, her parents and siblings, and/or any other person entitled to claim damages under state or federal law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant John V. Dunne for an amount in excess of $100,000.00, plus punitive damages in an amount to be set by the jury, costs, and attorneys' fees, and for all other legal and equitable remedies available under state and federal law.

## Count XXII
### (Plaintiff v. John V. Dunne, PhD)
### (State Law Claims/Negligence/Wrongful Death)

1.      At all relevant times, including March 26, 2003 to and including March 29, 2003,

defendant John Dunne was a duly licensed psychologist who did business with Lake County and/or

the Sheriff of Lake County, namely Dr. Dunne would, for profit, provide his professional assessment

of detainees and inmates of the Lake County Jail, for their fitness to stand trial and/or for evaluating

their risk of harming themselves or others.

2.      On March 26, 2003, Lake County Circuit Court Associate Judge Victoria Martin

entered an Order which ordered Dr. John Dunne and/or Karen Chantry, licensed clinical

psychologists, to examine Sandra Scott to determine her fitness to stand trial and to determine her

danger to herself and others.

3.      By virtue of this Order, the defendant Dunne was under a duty to exercise

reasonable care in terms of scheduling and evaluating Sandra Scott.

4.      By virtue of the Order, and its language that an evaluation was needed to assess

the danger Sandra Scott posed to herself and others, Dr. Dunne was under a duty to examine

Sandra Scott forthwith, or as soon as possible under the circumstances.

5.      From March 26, 2003 to and including March 29, 2003, this defendant had a duty

to possess and apply the knowledge and use the skill and care of a reasonably well qualified

psychologist under similar circumstances.

6.      Dr. Dunne was negligent and deviated from accepted standards of care in Illinois

for psychologists when he failed on March 26, 2003, March 27, 2003, March 28, 2003 or March 29,

2003, to go to the Lake County Jail to perform the evaluation on Sandra Scott.

7.      A reasonably well qualified and competent psychologist would have visited the Lake

County Jail on March 26, 2003, March 27, 2003, March 28, 2003 or March 29, 2003, and would have prepared a report that she was highly suicidal and made the appropriate arrangements to get her in a secure hospital setting where she could be continuously monitored.

8.     Had such a visit and evaluation occurred, more likely than not, it would have resulted in Sandra Scott being placed in a secure hospital setting where she could be continuously monitored, and her suicide and death would have been avoided.

9.     As a proximate result of the failures of Dr. Dunne identified above, the decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

10.     As a proximate result of one or more of these actions/inactions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

11.     As a proximate result of one or more of the aforesaid, Sandra Scott endured conscious pain and suffering, disability and disfigurement, prior to her death on September 29, 2003.

12.     That had she survived, Decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6, commonly known as the Survival Act.

13.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

14.     Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

15.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Illinois Wrongful Death Act, for the benefit of her daughter Breanna Workman, and/or any other person entitled to claim damages under state or federal law.

58

16.     Pursuant to the Illinois Code of Civil Procedure, Section 622, the affidavit of the Attorney for the Plaintiff and a report of a healthcare professional is attached hereto.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant John V. Dunne, for an amount in excess of $100,000.00, and for all other legal and equitable remedies available under state and federal law.

## Count XXIII
### (Plaintiff v. Richard Wagner, M.D./Provena Hospitals, Provena Saint Therese Medical Center/Vista Health/Saint Therese Medical Center)
### (State Law Claims/Negligence/Wrongful Death/Survival)

1.     On March 24, 2003, Provena Hospitals, an Illinois not for profit corporation, owned and operated Provena Saint Therese Medical Center.

2.     On November 12, 2004, Vista Health purchased Provena Saint Therese Medical Center, and operated the hospital as Saint Therese Medical Center.

3.     In this Count, "Provena Hospitals," "Provena Saint Therese Medical Center," "Vista Health" and "Saint Therese Medical Center" shall collectively be referred to as "Saint Therese Medical Center."

4.     At all relevant times, including March 24, 2003 defendant Saint Therese Medical Center was an Illinois corporation, engaged in the business, for profit, of providing medical and psychological services.

5.     On and before March 24, 2003, and at all relevant and material times, Defendant Richard Wagner was a duly licensed medical doctor.

6.     On and before March 24, 2003, and at all relevant and material times, Richard Wagner was an agent, apparent agent and/or employee of Saint Therese Medical Center.

7.     On and before March 24, 2003, and at all relevant and material times, Defendant Richard Wagner was acting within the scope of his employment and/or agency relationship with Saint Therese Medical Center.

59

8.     On and before March 24, 2003, Saint Therese Medical Center held out Richard Wagner as its employee, agent or apparent agent, which Plaintiff's decedent and family members reasonably and justifiably relied upon.

9.     On March 24, 2003, and at all times relevant and material, plaintiff's decedent Sandra Scott was a patient at Saint Therese Medical Center, where she came under the care and management of defendant Richard Wagner.

10.     On November 13, 2002, and at all times relevant and material, Sandra Scott was a patient at Saint Therese Medical Center where her past and current experiences with suicidal ideation, past suicide attempts and current suicide plan were all documented.

11.     On March 24, 2003, and at all times relevant and material hereto, during a Saint Therese Medical Center mental health evaluation, it was documented that Sandra Scott experienced current suicidal and homicidal ideation.

12.     On March 24, 2003, and at all times relevant and material hereto, Sandra Scott, because of her mental condition, could have reasonably been expected to inflict harm upon herself or another in the near future.

13.     On March 24, 2003, and at all times relevant and material hereto, Defendant Richard Wagner had knowledge concerning Sandra Scott's current suicidal and homicidal ideation, her past psychiatric history, medications and any reason for a possible mental evaluation.

14.     On March 24, 2003, and at all times relevant and material hereto, Defendant Richard Wagner had the statutory authority pursuant 405 ILCS 5/3-600 to involuntary admit Sandra Scott because of the risk that she posed to herself and others.

15.     On March 24, 2003, and at all times relevant and material hereto, Defendant Richard Wagner discharged Sandra Scott into the custody of the Waukegan, Illinois Police Department.

60

16.     On March 24, 2003, and at all times relevant and material hereto, this Defendant had a duty to possess and apply the knowledge and use the skill and care of a reasonably well qualified medical doctor in the same field under similar circumstances.

17.     On and before March 24, 2003, and all times relevant and material, while the plaintiff's decedent Sandra Scott was under his care, the defendant Richard Wagner, Individually and as an agent or employee of Saint Therese Medical Center, and Saint Therese Medical Center, and each of them, were negligent in that they:

a.     failed to determine that Sandra Scott was a high suicide risk;

b.     failed to determine that Sandra Scott was a person subject to involuntary admission  pursuant to 405 ILCS 5/1-119;

c.     failed to involuntary admit Sandra Scott after having been statutorily authorized to do so by virtue of Catherine Adams' petition for involuntary admission filed pursuant to 405 ILCS 5/3-600;

d.     failed to follow-up to ensure that a mental health evaluation occurred on a timely basis;

e.     took an incomplete and inaccurate history and evaluation;

f.     failed to properly communicate with Provena Saint Therese Medical Center Personnel regarding the mental stability or instability of Sandra Scott;

g.     failed to accurately or completely document plaintiff's condition;

h.     failed to recommend that Sandra Scott be checked every 15 minutes;

i.     failed to recommend that Sandra Scott be kept on continuous visual observation;

j.     failed to follow procedures and polices regarding the proper taking of a history, and evaluation;

k.     failed to recommend that Sandra Scott be placed in a room with a roommate;

61

18.     As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

19.     Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

20.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Wrongful Death Act, for the benefit of her daughter and/or any other person entitled to claim damages under state or federal law.

21.     That had she survived, decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

22.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, Deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

23.     Pursuant to the Illinois Code of Civil Procedure, Section 6-22, the affidavit of the Attorney for the Plaintiff and a report of a healthcare professional is attached hereto.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Richard Wagner, M.D., Individually and as an agent, apparent agent and/or employee of Saint Therese Medical Center and each of them for an amount in excess of $100,000.00, and for all other legal and equitable remedies available under state and federal law.

**Count XXIV**
**(Plaintiff v. Saint Therese Medical Center/Provena Hospitals, Provena Saint Therese**
**Medical Center/Vista Health/Saint Therese Medical Center**
**(State Law Claims/Negligence/Wrongful Death/Survival)**

1.      On March 24, 2003, Provena Hospitals, an Illinois not for profit corporation, owned and operated Provena Saint Therese Medical Center.

2.      On November 12, 2004, Vista Health purchased Provena Saint Therese Medical Center, and operated the hospital as Saint Therese Medical Center.

3.      In this Count, "Provena Hospitals," "Provena Saint Therese Medical Center," "Vista Health" and "Saint Therese Medical Center" shall collectively be referred to as "Saint Therese Medical Center."

4.      At all relevant times, including March 24, 2003 Defendant Saint Therese Medical Center was an Illinois corporation, engaged in the business, for profit, of providing medical and psychological services.

5.      On March 24, 2003, and at all times relevant and material, Defendant Saint Therese Medical Center, by and through its agent and/or employee Richard Wagner, M.D. and others provided care to plaintiff's decedent, Sandra Scott.

6.      On and before March 24, 2003, and at all times relevant and material, Richard Wagner and all persons who provided care to Sandra Scott were agents, apparent agents and/or employees of Saint Therese Medical Center.

7.      On and before March 24, 2003, Saint Therese Medical Center held out Richard Wagner and all persons who provided care to Sandra Scott as its employees, agents or apparent agents, which Plaintiff's decedent and family members reasonably and justifiably relied upon.

8.      On November 13, 2002, and at all times relevant and material, Sandra Scott was a patient at Saint Therese Medical Center where her past and current experiences with suicidal ideation, past suicide attempts and current suicide plan were all documented.

63

9.      On March 24, 2003, and at all times relevant and material hereto, during a Saint Therese Medical Center mental health evaluation, it was documented that Sandra Scott experienced current suicidal and homicidal ideation.

10.     On March 24, 2003, and at all times relevant and material hereto, Sandra Scott, because of her mental condition, could have reasonably been expected to inflict harm upon herself or another in the near future.

11.     On March 24, 2003, and at all times relevant and material hereto, Defendant Saint Therese Medical Center, by and through its agent and/or employee Richard Wagner, M.D. and others, had knowledge of Sandra Scott's current suicidal and homicidal ideation, her past psychiatric history, medications and any reason for a possible mental evaluation.

12.     On March 24, 2003, and at all times relevant and material hereto, Defendant Saint Therese Medical Center, by and through its agent and/or employee Richard Wagner, M.D. and others, had the statutory authority pursuant 405 ILCS 5/3-600 to involuntary admit Sandra Scott because of the risk that she posed to herself and others.

13.     On March 24, 2003, and at all times relevant and material hereto, Defendant Saint Therese Medical Center, by and through its agent and/or employee Richard Wagner, M.D. and others, discharged Sandra Scott into the custody of the Waukegan, Illinois Police Department.

14.     On March 24, 2003, and at all times relevant and material hereto, this defendant, by and through their agency and/or employment relationship with defendant Richard Wagner, M.D. and others, had a duty to possess and apply the knowledge and use the skill and care of a reasonably well qualified medical doctor in the same field under similar circumstances.

15.     On and before March 24, 2003, and all times relevant and material, while the plaintiff's decedent Sandra Scott was under their care, the Defendant Saint Therese Medical Center, by and through its agent and/or employee Richard Wagner, M.D. and others was negligent in that it:

64

a.  failed to determine that Sandra Scott was a high suicide risk;

b.  failed to determine that Sandra Scott was a person subject to involuntary admission pursuant to 405 ILCS 5/1-119;

c.  failed to involuntary admit Sandra Scott after having been statutorily authorized to do so by virtue of Catherine Adams' petition for involuntary admission filed pursuant to 405 ILCS 5/3-600;

d.  failed to recommend that Sandra Scott be involuntarily admitted;

e.  failed to follow-up to ensure that a mental health evaluation occurred on a timely basis;

f.  took an incomplete and inaccurate history and evaluation;

g.  failed to properly communicate with Provena Saint Therese Medical Center Personnel regarding the mental stability or instability of Sandra Scott;

h.  failed to accurately or completely document plaintiff's condition;

i.  failed to recommend that Sandra Scott be checked every 15 minutes;

j.  failed to recommend that Sandra Scott be kept on continuous visual observation;

k.  failed to follow procedures and polices regarding the proper taking of a history, and evaluation;

l.  failed to recommend that Sandra Scott be placed in a room with a roommate;

16.  As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

17.  Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

18.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action  pursuant to the Wrongful Death Act, for the benefit of her daughter and/or any other person entitled to claim damages under state or federal law.

19.     That had she survived, decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

20.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, Deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

21.     Pursuant to the Illinois Code of Civil Procedure, Section 6-22, the affidavit of the Attorney for the Plaintiff and a report of a healthcare professional is attached hereto.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Saint Therese Medical Center for an amount in excess of $100,000.00, and for all other legal and equitable remedies available under state and federal law.

### Count XXV
**(Plaintiff v. Milton Pozo, M.D./Excel Emergency Care, LLC/Provena Hospitals, Provena Saint Therese Medical Center/Vista Health/Saint Therese Medical Center)**
**(State Law Claims/Negligence/Wrongful Death/Survival)**

1.      On March 24, 2003, Provena Hospitals, an Illinois not for profit corporation, owned and operated Provena Saint Therese Medical Center.

2.      On November 12, 2004, Vista Health purchased Provena Saint Therese Medical Center, and operated the hospital as Saint Therese Medical Center.

3.      In this Count, "Provena Hospitals," "Provena Saint Therese Medical Center," "Vista Health" and "Saint Therese Medical Center" shall collectively be referred to as "Saint Therese Medical Center."

66

4.     At all relevant times, including March 24, 2003 defendant Saint Therese Medical Center was an Illinois corporation, engaged in the business, for profit, of providing medical and psychological services.

5.     At all relevant times, including March 24, 2003 Excel Emergency Care, LLC was an Illinois corporation that employed Dr. Pozo.

6.     On and before March 24, 2003, and at all relevant and material times, Defendant Milton Pozo was a duly licensed medical doctor.

7.     On and before March 24, 2003, and at all relevant and material times, Milton Pozo was an agent, apparent agent and/or employee of Saint Therese Medical Center and Excel Emergency Care, LLC.

8.     On and before March 24, 2003, and at all relevant and material times, Defendant Milton Pozo was acting within the scope of his employment and/or agency relationship with Saint Therese Medical Center and Excel Emergency Care, LLC.

9.     On and before March 24, 2003, Saint Therese Medical Center and Excel Emergency Care, LLC held out Milton Pozo as its employee, agent or apparent agent, which Plaintiff's decedent and family members reasonably and justifiably relied upon.

10.     On March 24, 2003, and at all times relevant and material, plaintiff's decedent Sandra Scott was a patient at Saint Therese Medical Center, where she came under the care and management of defendant Milton Pozo and Excel Emergency Care, LLC.

11.     On November 13, 2002, and at all times relevant and material, Sandra Scott was a patient at Saint Therese Medical Center where her past and current experiences with suicidal ideation, past suicide attempts and current suicide plan were all documented.

12.     On March 24, 2003, and at all times relevant and material hereto, during a Saint Therese Medical Center mental health evaluation, it was documented that Sandra Scott experienced current suicidal and homicidal ideation.

67

13.     On March 24, 2003, and at all times relevant and material hereto, Sandra Scott, because of her mental condition, could have reasonably been expected to inflict harm upon herself or another in the near future.

14.     On March 24, 2003, and at all times relevant and material hereto, Defendant Milton Pozo had knowledge concerning Sandra Scott's current suicidal and homicidal ideation, her past psychiatric history, medications and any reason for a possible mental evaluation.

15.     On March 24, 2003, and at all times relevant and material hereto, Defendant Milton Pozo had the statutory authority pursuant 405 ILCS 5/3-600 to involuntary admit Sandra Scott because of the risk that she posed to herself and others.

16.     On March 24, 2003, and at all times relevant and material hereto, Defendant Milton Pozo discharged Sandra Scott into the custody of the Waukegan, Illinois Police Department.

17.     On March 24, 2003, and at all times relevant and material hereto, this Defendant had a duty to possess and apply the knowledge and use the skill and care of a reasonably well qualified medical doctor in the same field under similar circumstances.

18.     On and before March 24, 2003, and all times relevant and material, while the plaintiff's decedent Sandra Scott was under his care, the defendant Milton Pozo, Individually and as an agent or employee of Saint Therese Medical Center, Saint Therese Medical Center, and as an agent or employee of Excel Emergency Care, LLC. and each of them, were negligent in that they:

     a.    failed to determine that Sandra Scott was a high suicide risk;

     b.    failed to determine that Sandra Scott was a person subject to involuntary admission pursuant to 405 ILCS 5/1-119;

     c.    failed to involuntary admit Sandra Scott after having been statutorily authorized to do so by virtue of Catherine Adams' petition for involuntary admission filed pursuant to 405 ILCS 5/3-600;

68

d.    failed to follow-up to ensure that a mental health evaluation occurred on a timely basis;

e.    took an incomplete and inaccurate history and evaluation;

f.    failed to properly communicate with Provena Saint Therese Medical Center Personnel regarding the mental stability or instability of Sandra Scott;

g.    failed to accurately or completely document plaintiff's condition;

h.    failed to recommend that Sandra Scott be checked every 15 minutes;

i.    failed to recommend that Sandra Scott be kept on continuous visual observation;

j.    failed to follow procedures and polices regarding the proper taking of a history, and evaluation;

k.    failed to recommend that Sandra Scott be placed in a room with a roommate;

19.    As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

20.    Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

21.    Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Wrongful Death Act, for the benefit of her daughter and/or any other person entitled to claim damages under state or federal law.

22.    That had she survived, decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

23.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, Deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

24.     That affiant, Kenneth J. Merlino, was unable to obtain a consultation required by paragraph one of 735 ILCS 5/2-622, because the statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations. The affidavit will be filed pursuant to paragraph two of 735 ILCS 5/2-622 and the certificate and written report shall be filed within 90 days after the filing of this complaint at law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendant Milton Pozo, M.D., Individually and as an agent, apparent agent and/or employee of Saint Therese Medical Center and Excel Emergency Care, LLC and each of them for an amount in excess of $100,000.00, and for all other legal and equitable remedies available under state and federal law.

### Count XXVI
### Plaintiff v. Saint Therese Medical Center/Provena Hospitals, Provena Saint Therese Medical Center/Vista Health/Saint Therese Medical Center/Excel Emergency Care, LLC
### (State Law Claims/Negligence/Wrongful Death/Survival)

1.     On March 24, 2003, Provena Hospitals, an Illinois not for profit corporation, owned and operated Provena Saint Therese Medical Center.

2.     On November 12, 2004, Vista Health purchased Provena Saint Therese Medical Center, and operated the hospital as Saint Therese Medical Center.

3.     In this Count, "Provena Hospitals," "Provena Saint Therese Medical Center," "Vista Health" and "Saint Therese Medical Center" shall collectively be referred to as "Saint Therese Medical Center."

70

4.    At all relevant times, including March 24, 2003 Defendant Saint Therese Medical Center was an Illinois corporation, engaged in the business, for profit, of providing medical and psychological services.

5.    At all relevant times, Excel Emergency Care, LLC was an Illinois corporation that employed Dr. Pozo.

6.    On March 24, 2003, and at all times relevant and material, Defendants Saint Therese Medical Center and Excel Emergency Care, LLC, by and through its agent and/or employee Milton Pozo, M.D. and others provided care to plaintiff's decedent, Sandra Scott.

7.    On and before March 24, 2003, and at all times relevant and material, Milton Pozo and all persons who provided care to Sandra Scott were agents, apparent agents and/or employees of Saint Therese Medical Center and Excel Emergency Care, LLC.

8.    On and before March 24, 2003, Saint Therese Medical Center and Excel Emergency Care, LLC held out Milton Pozo and all persons who provided care to Sandra Scott as its employees, agents or apparent agents, which Plaintiff's decedent and family members reasonably and justifiably relied upon.

9.    On November 13, 2002, and at all times relevant and material, Sandra Scott was a patient at Saint Therese Medical Center where her past and current experiences with suicidal ideation, past suicide attempts and current suicide plan were all documented.

10.    On March 24, 2003, and at all times relevant and material hereto, during a Saint Therese Medical Center mental health evaluation, it was documented that Sandra Scott experienced current suicidal and homicidal ideation.

11.    On March 24, 2003, and at all times relevant and material hereto, Sandra Scott, because of her mental condition, could have reasonably been expected to inflict harm upon herself or another in the near future.

71

12. On March 24, 2003, and at all times relevant and material hereto, Defendant Saint Therese Medical Center and Excel Emergency Care, LLC, by and through its agents and/or employees Milton Pozo, M.D. and others, had knowledge of Sandra Scott's current suicidal and homicidal ideation, her past psychiatric history, medications and any reason for a possible mental evaluation.

13. On March 24, 2003, and at all times relevant and material hereto, Defendants Saint Therese Medical Center and Excel Emergency Care, LLC, by and through its agents and/or employees Milton Pozo, M.D. and others, had the statutory authority pursuant 405 ILCS 5/3-600 to involuntary admit Sandra Scott because of the risk that she posed to herself and others.

14. On March 24, 2003, and at all times relevant and material hereto, Defendants Saint Therese Medical Center and Excel Emergency Care, LLC, by and through its agents and/or employees Milton Pozo, M.D. and others, discharged Sandra Scott into the custody of the Waukegan, Illinois Police Department.

15. On March 24, 2003, and at all times relevant and material hereto, this defendant, by and through their agency and/or employment relationship with defendant Milton Pozo, M.D. and others, had a duty to possess and apply the knowledge and use the skill and care of a reasonably well qualified medical doctor in the same field under similar circumstances.

16. On and before March 24, 2003, and all times relevant and material, while the plaintiff's decedent Sandra Scott was under their care, the Defendants Saint Therese Medical Center and Excel Emergency Care, LLC, by and through its agents and/or employees Milton Pozo, M.D., and others was negligent in that it:

      a.    failed to determine that Sandra Scott was a high suicide risk;

      b.    failed to determine that Sandra Scott was a person subject to involuntary admission pursuant to 405 ILCS 5/1-119;

72

    c.      failed to involuntary admit Sandra Scott after having been statutorily authorized to do so by virtue of Catherine Adams' petition for involuntary admission filed pursuant to 405 ILCS 5/3-600;

    d.      failed to recommend that Sandra Scott be involuntarily admitted;

    e.      failed to follow-up to ensure that a mental health evaluation occurred on a timely basis;

    f.      took an incomplete and inaccurate history and evaluation;

    g.      failed to properly communicate with Provena Saint Therese Medical Center Personnel regarding the mental stability or instability of Sandra Scott;

    h.      failed to accurately or completely document plaintiff's condition;

    i.      failed to recommend that Sandra Scott be checked every 15 minutes;

    j.      failed to recommend that Sandra Scott be kept on continuous visual observation;

    k.      failed to follow procedures and polices regarding the proper taking of a history, and evaluation;

    l.      failed to recommend that Sandra Scott be placed in a room with a roommate;

17.     As a direct and proximate result of one or more of the foregoing wrongful acts and omissions, Plaintiff's decedent Sandra Scott hung herself in her jail cell on March 29, 2003 at approximately 12:20 p.m.

18.     Plaintiff's decedent Sandra Scott leaves behind a daughter, Breanna Workman, date of birth April 10, 2001.

19.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, deceased, and brings this action pursuant to the Wrongful Death Act, for the benefit of her daughter and/or any other person entitled to claim damages under state or federal law.

20.     That had she survived, decedent Sandra Scott would have been entitled to bring an action for the injuries she suffered and said action has survived her death, pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

21.     Plaintiff is the duly appointed administrator of the estate of Sandra Scott, Deceased, and brings this action pursuant to 755 ILCS 5/27-6 commonly known as the Survival Act.

22.     That affiant, Kenneth J. Merlino, was unable to obtain a consultation required by paragraph one of 735 ILCS 5/2-622, because the statute of limitations would impair the action and the consultation required could not be obtained before the expiration of the statute of limitations. The affidavit will be filed pursuant to paragraph two of 735 ILCS 5/2-622 and the certificate and written report shall be filed within 90 days after the filing of this complaint at law.

Wherefore, the Plaintiff respectfully requests that this Court enter judgment in her favor and against defendants Saint Therese Medical Center and Excel Emergency Care, LLC for an amount in excess of $100,000.00, and for all other legal and equitable remedies available under state and federal law.

POWER ROGERS & SMITH, PC

By: _____

Attorney for Plaintiffs

Joseph A. Power, Jr.
Kenneth J. Merlino
POWER ROGERS & SMITH, P.C.
Three First National Plaza
70 W. Madison Street, 55th Floor
Chicago, IL 60602-4212
Telephone: (312) 236-9381
Fax: (312) 236-0920

Richard Daniels
Robert Long
Daniels Long & Pinsel
19 N. County Street
Waukegan, IL 60085
Telephone: (847) 623-5900
Fax: (847) 623-1767

74

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CHERYLANN CARPENTER, Administrator )
of the Estate of SANDRA SCOTT, Deceased, )
                                            )
                                            )
            Plaintiff, )
                                            )
        v. )     No.    04 C 2275
                                            )
OFFICE OF THE LAKE COUNTY SHERIFF, )   Hon. Amy St. Eve
Gary Del Re, Individually and as an agent or )
employee of the OFFICE OF THE LAKE )
COUNTY SHERIFF, Charles M. De Filippo, Jr., )
Individually and as an agent or employee of the )
OFFICE OF THE LAKE COUNTY SHERIFF, )
Rodney K. Holmes, Individually, and an as agent )
or employee of the OFFICE OF THE LAKE )
COUNTY SHERIFF, Peter C. Dickson, )
Individually and as an agent or employee of )
OFFICE OF THE LAKE COUNTY SHERIFF, )
Joel Mollner, L.C.S.W., Individually, and as an )
agent or employee of CORRECTIONAL )
MEDICAL SERVICES, INC., Genaline Japczyk, )
Individually, and as an agent or employee of )
CORRECTIONAL MEDICAL SERVICES, INC., )
KAREN WALKER, Individually, and as an agent )
or employee of CORRECTIONAL MEDICAL )
SERVICES, INC., RICHARD WAGNER, M.D., )
Individually, and as an agent or employee of )
CORRECTIONAL MEDICAL SERVICES, INC, )
CORRECTIONAL MEDICAL SERVICES, INC., )
JOHN V. DUNNE, PH.D., RICHARD WAGNER, )
M.D., Individually and as an agent or employee )
of PROVENA HOSPITALS, VISTA HEALTH, )
SAINT THERESE MEDICAL CENTER AND )
PROVENA SAINT THERESE MEDICAL CENTER, )
MILTON LEONARDO POZO, M.D., Individually )
and as an agent or employee of EXCEL )
EMERGENCY CARE, LLC, and as an agent or )
employee of PROVENA HOSPITALS, VISTA )
HEALTH, SAINT THERESE MEDICAL CENTER )
AND PROVENA SAINT THERESE MEDICAL )
CENTER; EXCEL EMERGENCY CARE, LLC.; )
PROVENA HOSPITALS, VISTA HEALTH, SAINT )
THERESE MEDICAL CENTER AND   PROVENA )
SAINT THERESE MEDICAL CENTER, )
                                            )
            Defendants. )

**AFFIDAVIT**

Affiant, KENNETH J. MERLINO, on behalf of plaintiff, Cherylann Carpenter, Administrator of the Estate of Sandra Scott, Deceased, pursuant to 735 ILCS 5/2-622(a)(2), and being first duly sworn on oath, deposes and states:

(a)     That this Affiant was unable to obtain a consultation by a qualified health professional prior to filing this Third Amended Complaint because the statute of limitations would impair the action and the consultation required under 735 ILCS 5/2-622(a)(1) could not be obtained before the expiration of the statute of limitations.

(b)     That this Affiant shall file, within ninety (90) days after the filing of this complaint, the appropriate required certification.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

_____

Kenneth J. Merlino

SUBSCRIBED AND SWORN to before me this 23rd day of March, 2005.

_____

Notary Public

> **OFFICIAL SEAL**
> **TRACEY L MORAN**
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES:02/23/08

POWER ROGERS & SMITH, P.C.
70 W. Madison Street, 55th Floor
Chicago, IL 60602-4212
312-236-9381
31444

2